**In the Matter of Charlene MORISSEAU, P.O. Box 2738, West New York, NJ 07093, Respondent.**

No. M–2–238.

United States District Court, S.D. New York.

Feb. 7, 2011.

---

*OPINION AND ORDER*

JED S. RAKOFF, District Judge.

**BEFORE THE COMMITTEE ON GRIEVANCES OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK[1]**

By this Opinion and Order, the Committee on Grievances for the United States District Court for the Southern District of New York (the "Committee") imposes discipline upon Charlene Morisseau pursuant to Rules 1.5(b)(5) and (c)(2) of the Local Civil Rules of this Court. For the reasons that follow, Ms. Morisseau is hereby precluded from appearing as an attorney at the bar of this Court.

---

1. The Committee consists of District Judge Jed S. Rakoff, Chair; Chief Judge Loretta A. Preska; District Judges Paul G. Gardephe, Kenneth M. Karas, John F. Keenan, Colleen McMahon, Louis L. Stanton, Richard J. Sullivan; and Magistrate Judge Debra Freeman

## Introduction

This matter was referred to the Committee by the Honorable Kimba Wood, the then Chief Judge of this Court, to determine whether to impose discipline upon attorney Charlene Morisseau for her conduct in two actions assigned to District Judge Lewis Kaplan in which she was a plaintiff, *pro se: Morisseau v. DLA Piper, et al.*, 06 CV 13255(LAK) (*"Morisseau I"*); and *Morisseau v. DLA Piper*, 10 Civ. 00156(LAK) (*"Morisseau II"*).

On April 19, 2010, the Committee appointed T. Barry Kingham of Curtis, Mallet–Prevost, Colt & Mosle LLP ("Investigating Counsel"), a member of the panel of attorneys appointed to advise and assist the Committee on Grievances, to investigate Ms. Morisseau's conduct and to prepare a statement of charges if the Committee deemed it warranted. Based upon the investigation and report of Investigating Counsel, the Committee approved a Statement of Charges dated September 17, 2010 (the "Charges"). The Charges assert violations of various provisions of the Disciplinary Rules and Code of Professional Conduct[2] arising out of Ms. Morisseau's conduct in *Morisseau I* and *Morisseau II.*

By Order dated September 17, 2010, the Committee ordered Ms. Morisseau to show cause by October 7, 2010 why she should not be disciplined pursuant to the Charges, which were attached to the Order. The response date was later extended by the Committee to October 28, 2010 at the request of Investigating Counsel because Ms. Morisseau had not received actual no-

tice of the Charges until after the October 7 deadline.[3]

Ms. Morisseau did not respond to the Order to Show Cause. Instead, on October 25, 2010, she filed a "Motion For Recusal, Disqualification, Or Hearing And Motion For Stay Of Proceedings Pending Decision." She alleged in the motion that (a) the Committee lacked jurisdiction over her because she is not a member of the Bar of this Court and had appeared *pro se*; (b) the Chair of the Committee should be recused and Investigating Counsel disqualified because Investigating Counsel had communicated with the Chair by e-mail to convey the request to extend the deadline for Ms. Morisseau's benefit; and (c) discovery and a hearing should occur as to communications between the Chair and Investigating Counsel, and a stay of proceedings granted in the meantime.

■ The Committee denied the motion by Order dated November 10, 2010, which also extended to November 22, 2010 the deadline for responding to the September 17 Order and provided that no further extensions to respond would be granted. Although the November 10 Order was sent by certified mail to Ms. Morisseau's post office box, she did not retrieve it from the post office, and it was returned by the postal service to the Clerk of the Committee. Ms. Morisseau did, however, obtain a copy of the November 10 Order by e-mail from Investigating Counsel on November 29, 2010 after she inquired about the status of the motion.

Ms. Morisseau is in default. After her objections to jurisdiction and motion for

---

**2.** Effective April 1, 2009, the Disciplinary Rules were re-codified as the Code of Professional Conduct, with slight differences not material to the issues in this matter.

**3.** Ms. Morisseau's mailing address on file with the Court is a post office box in West New York, New Jersey. Despite timely delivery of the Court's September 17, 2010 Order to Show Cause to that address, Ms. Morisseau did not retrieve it from the post office until October 8. Investigating Counsel then requested, *sua sponte*, an extension of the deadline to October 28.

recusal and disqualification were denied, she did not respond to the Committee's Order to Show Cause and she has not answered the Charges. Accordingly, pursuant to Local Civil Rule 1.5(d)(4), no hearing is required and the Committee may proceed to impose discipline.

### *Jurisdiction*

■ Although Charlene Morisseau is not a member of the bar of this Court, the Committee has jurisdiction over her activities in this Court pursuant to Local Civil Rule 1.5(b)(5). The rule provides that discipline or other relief may be imposed by the Committee if, "[i]n connection with activities in this court, *any attorney* is found to have engaged in conduct violative of the New York State Rules of Professional Conduct ...." (emphasis added). Ms. Morisseau is an attorney, and she engaged in activities in this Court in two cases before Judge Kaplan. In addition, she was admitted to the bar of this Court *pro hac vice* to permit her to use the Court's ECF system. Accordingly, Ms. Morisseau is subject to the jurisdiction of the Committee.

■ Ms. Morisseau's status as a *pro se* litigant does not exempt her from the Disciplinary Rules and Rule of Professional Conduct. Local Civil Rule 1.5(b)(5) applies to "any attorney," not only those appearing for a client. Moreover, as the Supreme Court of Connecticut stated in affirming the discipline of a lawyer appearing *pro se:*

'Whether an attorney represents himself or not, his basic obligation to the court as an attorney remains the same. He is an officer of the court.... Disciplinary proceedings not only concern the rights of the lawyer and the client, but also the rights of the public and the rights of the judiciary to ensure that lawyers uphold their unique position as officers ... of the court.... An attorney must conduct himself or herself in a manner that comports with the proper functioning of the judicial system.'

*Notopoulos v. Statewide Grievance Committee,* 277 Conn. 218, 231–32, 890 A.2d 509, 517 (2006), *cert. denied,* 549 U.S. 823, 127 S.Ct. 157, 166 L.Ed.2d 39 (2006) (quoting *Matter of Presnick,* 19 Conn.App. 340, 345, 563 A.2d 299(Conn.App.1989)). Other courts have also held that attorneys who act as *pro se* litigants must continue to comply with the court's attorney disciplinary rules and may be disciplined pursuant to those rules for actions or conduct engaged in as a *pro se* litigant.[4] *See Sprauve v. Mastromonico,* 86 F.Supp.2d 519, 530 (D.Vi.1999) ("The plaintiff is an attorney whenever he appears before the Court, the public, or the mirror."); *Iowa Supreme Court Attorney Disciplinary Board v. Weaver,* 750 N.W.2d 71, 92 (Sup.Ct.Ia. 2008).

Accordingly, Ms. Morisseau is subject to the jurisdiction of this Committee.

### *Findings of Facts*

The Committee finds the following facts, as set forth in the Charges and based upon the written record in *Morisseau I* and *Morisseau II:*

1. Ms. Morisseau graduated from Harvard College in 1995 and from Harvard Law School in 2001. She was an editor of the Harvard Law Review. Ms. Morisseau took the New York Bar Examination in July 2001 and passed. She was admitted

---

**4.** Some state courts do not apply the state's disciplinary rules to *pro se* attorney litigants not licensed in the state. *See, e.g., Dawson v. Cheyovich Family Trust,* 149 Idaho 375, 234 P.3d 699, 706 (2010). While we do not agree with such an exception, it would not apply to Ms. Morisseau, who is licensed in New York and engaged in conduct in this Court in New York.

to the New York Bar in the Second Department in July 2005.[5]

2. Commencing in October 2001, Ms. Morisseau was employed by the Southern Center For Human Rights ("SCHR") in Atlanta Georgia. She resigned from SCHR in June 2002.

3. Ms. Morisseau joined the litigation department of DLA Piper LLP (then Piper Rudnick) on April 28, 2003 as an associate. Her employment there was terminated involuntarily on April 14, 2004.

### A. *Morisseau I*

4. Ms. Morisseau filed a complaint with the EEOC against DLA Piper in February 2005 alleging that she had been discriminated against on the basis of race and gender. The EEOC issued a right to sue letter in August 2006. Thereafter, in November 2006, Ms. Morisseau commenced *Morisseau I* in this Court against DLA Piper and a number of its partners.

5. The complaint in *Morisseau I* alleged violations of Title VII of the Civil Rights Act of 1964; 42 U.S.C. § 1981; and the New York City and State Human Rights Laws.

6. The principal factual allegations of the complaint in *Morisseau I* were that Ms. Morisseau had been discriminated against at DLA Piper because she is an African–American female. She alleged that she had been subjected to a hostile work environment and that, although she had complained about discriminatory behavior at the firm, no action was taken on her complaints. The complaint asserted that Ms. Morisseau's employment was terminated in retaliation for her complaints.

7. Ms. Morisseau's complaint alleged further that the firm's retaliatory conduct continued after termination because she had refused to enter into a severance agreement that included a release of her claims. The complaint also asserted that one of the firm's partners interfered with her efforts to be admitted to the New York Bar. The complaint did not allege that any particular religious or ethnic group had discriminated against Ms. Morisseau.

### B. *Ms. Morisseau's Conduct In Morisseau I Prior To Dismissal*

8. DLA Piper filed an answer and motion to dismiss the complaint on December 20, 2006. The defendants asserted that Ms. Morisseau's employment was terminated because she had been insubordinate and difficult to work with. They denied that race or gender had played any part in the termination decision.

9. The Court[6] granted the motion to dismiss in part on February 9, 2007, dismissing Title VII disparate impact claims without prejudice and allowing an amendment. A consent discovery schedule was filed on February 16, 2007, which required filing a pretrial order by May 31, 2007.

10. Pre-trial discovery was marked by Ms. Morisseau's repeated failure to comply with discovery orders and the Federal Rules of Civil Procedure. On March 29, 2007, for example, Ms. Morisseau was ordered to pay defendants $5,000 to compensate them for part of the attorneys' fees incurred in applying for sanctions and in conducting her deposition without the ben-

---

**5.** By Order of the Appellate Division, Third Department, entered November 4, 2010, which resulted from charges that are not related to the events addressed in the instant Opinion and Order, Ms. Morisseau was found guilty of professional misconduct and suspended from the practice of law in the state of New York for a period of one year commencing November 24, 2010.

**6.** Unless otherwise indicated, "the Court" refers to Judge Kaplan.

efit of documents the Court had ordered be produced in advance. The sanction included preclusion of evidence of economic damages reflected in those documents unless production was complete by April 2, 2007. The order to pay sanctions was reduced to a judgment entered on April 23, 2007.

11. At the commencement of the action, Ms. Morisseau had been represented by the firm of Bader & Nadler, PC ("Ballon Stoll"). However, on April 9, 2007, just prior to the close of discovery, and just as a Ballon Stoll lawyer was about to conduct a deposition of a DLA Piper partner, Ms. Morisseau terminated the services of Ballon Stoll. At a conference on April 10, the Court stayed all proceedings for 30 days to permit Ms. Morisseau time to obtain new counsel. She did not do so and proceeded *pro se.*

12. On May 29, 2007, the Court issued an order as follows: (1) granting Ballon Stall's motion to withdraw, and fixing common law and statutory liens in the amount of $132,884.84 for unpaid fees and expenses pursuant to Ms. Morisseau's retainer agreement; (2) granting defendants' motion to compel a Rule 35 psychiatric examination of Ms. Morisseau; and (3) granting defendants' motion to compel and for sanctions (a) precluding proof of economic damages unless production deficiencies were cured by June 15, 2007, and (b) requiring payment of expenses for any future deposition of certain witnesses whose depositions Ms. Morisseau had unilaterally cancelled.

13. On June 13, 2007, the Court issued an order, *sua sponte,* admitting Ms. Morisseau *pro hac vice* "for the purpose of representing herself in this action" and directing the Clerk to permit her to register on the ECF system.

14. Ms. Morisseau then moved for reconsideration of various orders, including the May 29, 2007 order. The Court denied the motions for reconsideration on June 28, 2007 and Ms. Morisseau appealed to the Second Circuit from that denial and from the underlying orders. The Second Circuit denied Ms. Morisseau's request for an emergency stay of the Rule 35 examination scheduled for July 10, 2007.

15. On July 19, 2007, defendants moved to compel an additional day of Rule 35 examination. The Court (Chief Judge Wood in Part I) granted the motion on August 10, 2007, ordering Ms. Morisseau to appear on August 14 for the examination and cooperate with psychological testing. Chief Judge Wood's order warned Ms. Morisseau that her failure to comply could result in dismissal of the action.

16. Ms. Morisseau did not appear as ordered for the examination on August 14. Instead, she moved by Order to Show Cause that day for a stay of the August 10 order. Chief Judge Wood denied the application as "baseless" and stated that defendants could choose to set a new date for the examination or move to dismiss the complaint. Defendants filed a motion to dismiss on August 15.

17. On September 6, 2007, the Court issued an order (1) conditionally granting defendants' motion to dismiss the complaint as a sanction for Ms. Morisseau's failure to comply with Judge Wood's order to appear for the Rule 35 examination, unless Ms. Morisseau did so by October 8, 2007; (2) denying as moot plaintiff's motion to stay the examination pending the appeal, which had been dismissed; (3) granting defendants' motion to compel the third day of Ms. Morisseau's deposition; (4) setting a revised schedule for the pretrial order and summary judgment motions; and (5) recognizing that because Ms. Morisseau had not complied with the May 29, 2007 order to produce documents

relating to economic damages, her claim for economic damages was therefore dismissed.

18. In addressing Ms. Morisseau's failure to appear for the Rule 35 examination, the Court stated, "In all the circumstances, there is no question whatever that the plaintiff acted in bad faith and willfully defied a direct order of the Court." The Court stated further, "Plaintiff is warned that the failure to comply with this or any other order of this Court is likely to result in the imposition of further sanctions, which may include dismissal of the action."

19. Subsequently, on October 1, 2007, Ms. Morisseau filed a motion under Fed R. Civ. P. 60(b)(4) asking the Court to vacate and reconsider the order dated May 29, 2007 (see ¶ 12, above) on the ground that defendants' counsel had failed to meet and confer prior to making the underlying motion on May 3. The Court denied the Rule 60(b) motion on October 3, 2007, stating that it "lacked any shred of merit." The Court noted further that although it would not proceed at that time to impose sanctions on Ms. Morisseau under Rule 11, it might do so in the future "with respect to this and any further potential Rule 11(b) violations."

## C. *Dismissal Of Morisseau I*

20. Defendants moved for summary judgment in *Morisseau I* on October 29, 2007. After requesting extensions of time to file a memorandum in opposition, Ms. Morisseau did not do so, and she did not file a response to the defendants' statement under Fed.R.Civ.P. 56.1. Instead, after the deadline for filing opposition papers, she submitted three volumes of exhibits, without an index.

21. The Court issued an order on December 3, 2007 granting summary judgment to the defendants and dismissing the complaint. Reviewing the submissions of the parties, the Court found no evidence to support any of Ms. Morisseau's claims. Commenting on Ms. Morisseau's conduct during the litigation, the Court stated:

Plaintiff is a member of the Bar, a graduate of Harvard Law School, and a former editor of its law review. She is fully able to conduct this litigation properly. She has repeatedly failed to do so. Indeed, she has defied court orders, ignored schedules, failed to show up for or obstructed her deposition, and filed frivolous applications.

## D. *Ms. Morisseau's Conduct in Morisseau I After Dismissal*

22. Thereafter, on December 18, 2007, Ms. Morisseau filed a motion pursuant to Fed.R.Civ.P. 59(e) for reconsideration of the December 3 order dismissing the complaint.

23. On December 20, 2007, Ms. Morisseau filed a motion for leave to file a motion to recuse Judge Kaplan. In the latter motion she stated, among other charges, that "Judge Kaplan's actions ... reveal [his] judicial abdication in applying governing legal principles, willful blindness to defense counsel's abusive discovery practices, and antagonism to Plaintiff's representation of the action."

24. On December 21, 2007, the Court denied Ms. Morisseau's motion for leave to seek recusal on the ground that leave of court is not required to file a recusal motion. Ms. Morisseau filed a "Declaration In Objection" to that order the same day, but did not thereafter file a recusal motion.

25. On January 23, 2008, the Court issued a detailed 56–page opinion denying Ms. Morisseau's motion for reconsideration of the dismissal and summary judgment. The Court reviewed all of the evidence and reaffirmed its findings that there was no genuine issue of fact to be tried, and that

defendants were entitled to judgment as a matter of law dismissing all counts of Ms. Morisseau's complaint.

26. In addition to denying the Rule 59(e) motion, the Court addressed the issue of recusal, noting that Ms. Morisseau had not actually filed a motion to recuse the Court and that no grounds for recusal existed in any event.

27. Ms. Morisseau filed a notice of appeal on February 3, 2008, apparently initially only from the January 23, 2008 order denying reconsideration, but later amended to encompass the Court's earlier rulings.

28. On February 6, 2008, Ms. Morisseau filed a Motion for Reconsideration of the Court's January 23, 2008 order denying her Rule 59(e) motion. The Court denied this new motion in an order that same day, without an opinion.

29. On July 24, 2008, Ms. Morisseau filed a motion to have certain letters placed on the record and preserved for appeal. In that motion, for the first time, she described *Morisseau I* as an action "against a Jewish practice group" at DLA Piper and an action "against the members of management who used their human resources status to protect the unlawful interest of said Jewish partners...." She stated further:

> ... the Jewish partners had openly operated a race-and sex-based patronage system that gave preferential treatment to Jewish associates and non-minorities, placing Jewish and non-minority men at the top of their economic and professional hierarchy, while begrudgingly hiring the occasional minority to manage appearances for their clients ("window dressing").

She also stated that her action was "against structural Jewish racism." None of these allegations are in her complaint

and no pleading asserted that Ms. Morisseau's employment had been terminated by—or to protect—any religious or ethnic group.

30. The Court considered the motion as filed under Fed. R.App. P. 10(e) and denied it on July 28, 2008 because the two letters Ms. Morisseau sought to have docketed were already on the Court's docket. The Court stated, "The Court reserves the question whether to impose sanctions upon plaintiff for this baseless and frivolous filing until after disposition of the pending appeal."

31. Defendants responded to Ms. Morisseau's motion by filing a motion for sanctions for her "vexatious, anti-Semitic allegations." Characterizing Ms. Morisseau's language as an "anti-Semitic rant," defendants pointed out that the pleadings in the case did not contain any allegation of religious discrimination or "structural Jewish racism" at DLA Piper. They alleged that her language violated her ethical responsibilities as an attorney under then-applicable DR 7–102, which proscribed actions a lawyer knows would serve merely to harass or maliciously injure another. Defendants sought sanctions striking her motion from the record, as well as monetary sanctions.

32. On July 30, 2008, Ms. Morisseau "resubmitted" the motion to docket the letters. She filed an opposition to the motion for sanctions on July 31. In both pleadings she repeated the description of the case as being against a Jewish practice group at DLA Piper who were unlawfully protecting the interests of Jewish partners. She denied making racial slurs or "derogatory statements against anyone's creed, race, etc." Claiming a first amendment right to characterize her action, she stated:

> The standard is not what offends Proskauer Rose's sensibilities or their

client's reputation. Indeed, it seems as if merely stating a claim sounding in Title VII and § 1981 against Jewish racism offends the defense. All Plaintiff has done is cast her claims. Proskauer Rose does not even deny that the practice group that Plaintiff worked in was administered by Jewish partners.

As Proskauer Rose is aware, Plaintiff's motions for reconsideration following dismissal included references to exhibits that Proskauer Rose had submitted in its summary judgment petition, wherein there was direct evidence that the defendants had hired and promoted *Jewish* associates on the basis of their race/creed and gender. This Court had received those exhibits *before* dismissing this action. For example, Plaintiff expressly identified Jewish associates (e.g. Shani Dilloff) as comparators. The matters raised in Plaintiff's petition regarding what Plaintiff characterized as a Jewish patronage system are, accordingly, properly before the Second Circuit on appeal. (emphasis in original) [ [7] ]

33. The Court denied Ms. Morisseau's motions in an order dated September 2, 2008. The Court likewise denied defendants' motion for sanctions, without prejudice to move for sanctions at the end of the appellate process.

34. On October 24, 2008, Ms. Morisseau filed a Motion to Compel and Amend the Record, seeking to have the docket corrected to reflect the correct authorship of correspondence with the Court and to address certain statements made by the Court. The first of such statements was made at the conference on April 10, 2007 (erroneously "April 7, 2007" in the motion).

In her motion, Ms. Morisseau questioned the Court's veracity at that conference:

At the onset of the conference the district court refused to answer when Plaintiff questioned why an emergency conference had been scheduled and who had contacted the district court about Ballon Stoll's termination. Judge Kaplan claimed that he could not recall how the matter had come to his attention, although it had been a mere few hours earlier.

35. The October 24, 2008 motion then addressed the dismissal order entered on December 7, 2008 (erroneously "December 4, 2004" in the motion), accusing the Court of making a false claim:

Subsequently in a dismissal order entered on December 4, 2004[sic], Judge Kaplan falsely claimed that Plaintiff had terminated her counsel on the day prior to the scheduled deposition of Defendant Amy Schulman, Esq., the wife of the judge's former partnership [sic] in New York. Combined with several other false factual assertions by the judge, the allegation was proffered as independent grounds for dismissal of [plaintiff's] case under the federal [sic] Rules of Civil Procedure, rather than on the merits.

In a later passage, Ms. Morisseau questioned whether the source of the Court's "misinformation" had been received *ex parte* from defendants' counsel.

36. On October 30, 2008, the Court granted Ms. Morisseau's motion to correct the record as to the authorship of the letters and denied the remainder of the motion. The Court denied defendant's request for sanctions, without prejudice to renewal.

---

**7.** The only apparent reference to any "Jewish" associate in Ms. Morisseau's earlier motion papers is in a footnote in the memorandum in support of her Rule 59(e) motion, which states: "Ms. Schaeffer, who the Firm listed as 'Hispanic' is Jewish. The Firm has not provided documentation as to the basis for characterizing her as a racial minority, while the human resources charts label other Jewish women (e.g. Shani Dilloff) as 'white.'"

37. That same day, Ms. Morisseau filed a "Motion To Compel Affidavits Re: Ex Parte Communications." By this motion, Ms. Morisseau sought to obtain affidavits from a former law clerk to the Court, and from defendants' counsel concerning supposed communications in connection with the conference held by the Court on April 10, 2007. The Court denied the motion on December 9, 2008.

38. On November 3, 2008, Ms. Morisseau filed a motion for sanctions against defendants' counsel under Fed.R.Civ.P. 11. She alleged principally that defendants' lead counsel had filed a false affidavit stating that Ms. Morisseau had never requested that defendant's counsel provide her with a complete copy of certain correspondence.

39. In an order dated December 2, 2008, the Court denied the motion for sanctions and noted that Ms. Morisseau had made a number of unsubstantiated charges, including that defendants' counsel had "confessed to perjuring themselves," had "repeatedly lied about the conduct of Plaintiff's prior counsel," "were caught withholding files," and had made false accusations about Ms. Morisseau's discharge of her counsel and failure to attend her deposition in 2007. However, the Court reserved until after disposition of Ms. Morisseau's appeal, "the matter of sanctions [against her] ... with respect to this filing as well as with respect to all other matters."

40. On December 9, 2008, the Court denied Ms. Morisseau's October 30, 2008 "Motion To Compel Affidavits Re: Ex Parte Communications." The Court rejected the motion as a "baseless" effort to obtain discovery in a case that was on appeal, in an effort to obtain evidence to use to recuse the Court.

### E. *The Appeal In Morisseau I*

41. Ms. Morisseau's appeal from the Court's dismissal of the complaint in *Morisseau I* proceeded. After a series of delays caused by motion practice, including an abortive motion to disqualify defendants' counsel, Ms. Morisseau's brief was filed with the Second Circuit on November 26, 2008.

42. On December 9, 2009, the Second Circuit (Feinberg, Walker and Katzmann, Circuit Judges), issued a summary order affirming the judgment below. The order states: "We have considered all of Morisseau's arguments on appeal and find them without merit." The court denied Ms. Morisseau's pending motions as moot.

### F. *Morisseau II*

43. On August 9, 2009, while her appeal in *Morisseau I* was pending in the Second Circuit, and before oral argument, Ms. Morisseau commenced a new action against DLA Piper in the United States District Court for the Eastern District of New York (*Morisseau II*). The case was assigned to Hon. Alleyne R. Ross.

44. Ms. Morisseau's complaint in *Morisseau II* alleged that DLA Piper had breached a confidentiality order in the SDNY case by furnishing confidential documents to ALM Media, Inc. in violation of a confidentiality order in that case. Ms. Morisseau alleged that DLA Piper's breach of the order violated Title VII because it was retaliation for her having engaged in protected activity by complaining to the EEOC and filing suit against DLA Piper in *Morisseau I*.

45. The summons and complaint in *Morisseau II* were not served until December 7, 2009. Thereafter, on December 16, 2009, Judge Ross transferred the case to the Southern District of New York pursuant to 28 U.S.C. § 1391(b), due to lack of

proper venue in the Eastern District. The case was assigned to Judge Kaplan on January 8, 2010 under docket number 10–cv–00156 (LAK).

46. Represented by Proskauer Rose, defendant moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) on January 11, 2010.

47. Ms. Morisseau did not respond directly to the motion. Instead, on February 15, 2010, she moved to recuse the Court; to obtain discovery in furtherance of the motion; and for a stay pending a decision.

48. In her memorandum in support of the motion, Ms. Morisseau repeated the statement that "the Jewish partners [had] filed false accusations about her character and performance. . . ." She also stated: (1) "James Pelzer, Esq. . . . . a Jewish attorney and clerk of the state appellate court's Second department," had filed criminal charges against her; (2) "Judge Kaplan took the unusual step of providing sworn testimony on [his former law partner] Blumstein's behalf during disbarment proceedings. Reportedly Kaplan did so to argue that the bar disciplinary committee should excuse the Jewish partner's conduct because the conduct of the Jewish partner's wife was the root of the criminal conduct"; (3) "The EEOC attorney who handled the interviews and the dismissal of Morisseau's charge is Elizabeth Grossman, a Jewish attorney . . ."; (4) "The lead attorneys from Ballon Stoll administering Morisseau's case are Jewish. No one but the Jewish partners at Ballon Stoll and Proskauer, and judge [sic] Kaplan, know what transpired behind closed doors during the court conference. . . ."

49. On February 17, 2010, the Court granted the defendant's motion to dismiss and also denied Ms. Morisseau's recusal motion, noting that it was without merit and was based upon matters alleged in *Morisseau I* and rejected by the Second Circuit. The Court dismissed the complaint and directed the Clerk of Court to close the case.

50. On February 23, 2010, Ms. Morisseau filed a motion for an order "preserving all communications and letters from the parties, whether filed in the SDNY or the EDNY, onto the electronic docket and preserved for the Record on Appeal." In her motion, Ms. Morisseau referred again to "Jewish partners" and "Heidi Levine, a Jewish partner at DLA Piper" and, referring to lawyers at Ballon Stool, "[each] of these attorneys is Jewish."

51. On February 24, 2010, the Court denied Ms. Morisseau's motion, stating:

> The Court is mindful of plaintiff's behavior following the entry of judgment against her in the previous action, *Morisseau v. DLA Piper*, 06 Civ. 13255(LAK), in which she made over thirty post-judgment motions to the Court and the Court of Appeals. Any further baseless motions will subject her to the risk of substantial sanctions.

52. On March 3, 2010, Ms. Morisseau filed a motion to vacate the Court's February 17, 2010 order dismissing the complaint; to recuse the Court; and to stay the action pending discovery in furtherance of recusal/transfer. In support of the motion she filed a "Memorandum In Support Of Reconsideration Pursuant to Rule 59(e)." The memorandum contains the following statements;

> Consistent with its administration of Plaintiff's prior employment action, the SDNY ignores the facts before it and merely echo arguments pressed by the Jewish attorneys whole cloth. . . .

> \* \* \*

> Evidently, the SDNY intends to continue the practice of 'Jew apartheid jus-

tice'—for, by, and of Jews only—in the state of New York.

\* \* \*

Note, when SDNY entered the Confidentiality Order that the Jewish practice group at Proskauer drafted, it did so with the intent to gag Plaintiff from disclosing onto the public docket evidence of criminal Jew apartheid (i.e., race-based racketeering) at DLA Piper.... At the time when the SDNY entered the Confidentiality Order, Jewish attorneys at Ballon Stoll represented Plaintiff. Although Plaintiff had expressly advised her attorneys not to sign any gag order of any kind, Ballon Stoll executed it, without her knowledge or consent, to protect the Jews at DLA Piper. The SDNY, likewise acting to protect the interest of the Jews at DLA Piper, went so far as to restrict the Party's ability to even disclose documents between and among qualified recipients because the SDNY assumed that *Plaintiffs disclosure would be policed by the Jewish lawyers at Ballon Stoll* [emphasis in original]. Plaintiff's disclosures were to be a ward of the Jewish administrators.

Then Plaintiff fired Ballon Stoll. The SDNY became incensed, and beg an a wrathful campaign of retaliation through abusive use of judicial power, including three days of Rule 35 testing, unsubstantiated sanctions, and of orders with false accusations against the Plaintiff's "case management".... Discovery must be mandated to determine whether the putrid jurisprudence spewing from the SDNY is the byproduct of unlawful racially biased, and/or criminal conduct.

\* \* \*

SDNY has now birthed [sic] for the protection of the Jewish offenders, *the manner* by which the Jews disclosed the documents was still separately and strictly conditioned on the execution of the recipient agreeing to also be bound. [emphasis in original]

\* \* \*

The SDNY does not have the power to modify the terms of the Confidentiality Order *post hoc* in order to release the Jewish offenders from liability or to escape discovery into the SDNY's administration of Morisseau's actions.

\* \* \*

The SDNY obviously seeks to use the Confidentiality Agreement as both a sword and a shield-permeable when the interests of the Jews are at stake for breaching the Confidentiality Order, but simultaneously inviolate when the Jews' interests are at stake because Plaintiff seeks to disclose the Cortis files and Defendant's Rule 56.1 Statement to the press. And the Jews alone control which protection is triggered at which time. The SDNY's dismissal ruling is manifest error, engineering a favorable outcome in all instances for the Jews involved.

\* \* \*

SDNY itself breached the Confidentiality Order after the Jewish practice group at Proskauer Rose sent a letter of confession to the chambers of Judge Lewis Kaplan, the Jewish administrator of Morisseau's employment action.

\* \* \*

Administration of justice by the SDNY is lawless, subject only to the personal whims of Jewish constituents settled in the state of New York. The dismissal order should be vacated, Lewis Kaplan recused, and/or this case stayed pending discovery into recusal and transfer of this case to a competent court in a territory outside the disproportionately Jew-

ish administration of courts in Manhattan and Brooklyn.

53, The Court denied the motion on March 4, 2010, stating, "All of her arguments are baseless."

## G. *Post–Affirmance Conduct In Morisseau I*

54. After the Second Circuit affirmed the dismissal of the complaint in *Morisseau I* on December 9, 2009, defendants attempted to enforce their judgment for costs against Ms. Morisseau, in the amount of $20,153.52. To that end, on February 4, 2010, they served an information subpoena upon Ms. Morisseau, seeking information about her assets. She did not respond to the subpoena.

55. On March 11, 2010, defendants filed a motion with the Court seeking to compel compliance with the information subpoena. Ms. Morisseau did not respond to the motion.

56. Ms. Morisseau did, however, file a motion on March 17, 2010. She moved the Court to require defendants to produce all acknowledgement forms required by the confidentiality order entered in the case during discovery; to recuse the Court; and to transfer the case to another judge. The thrust of the request for acknowledgement forms was the allegation, also made in *Morisseau II*, that, after summary judgment was granted, defendants had provided confidential documents to ALM Media, Inc., which had thereafter published a story about the case. In the motion, Ms. Morisseau stated:

> Per the attached declaration, *Exhibit 2,* the SDNY has entered a series of judgments and undertaken a series of actions with the express purpose of obstructing Ms. Morisseau's access to justice against the Jewish practice group at DLA Piper, obstructing Ms. Morisseau's access to fair administration of justice against the Jewish defense attorneys at Proskauer rose LLP, and engineering the outcome of Ms. Morisseau's court actions. [emphasis in original]

57. In Exhibit 2 to the motion, a declaration electronically signed by Ms. Morisseau, the following statements appear:

> The primary administrator of the bar proceedings was James Pelzer. He is an attorney admitted to practice in the state of New York. He is a Jew.

> \*    \*    \*

> At all times during the bar proceedings, Proskauer Rose represented DLA Piper. All of the attorneys at Proskauer Rose who have entered an appearance are Jewish.

> \*    \*    \*

> The regional attorney [at the EEOC] assigned to the investigation was Elizabeth Grossman. Ms. Grossman is Jewish and is admitted to practice in the state of New York.

> \*    \*    \*

> The attorney who I hired to work on my case at Ballon Stoll was Marshall Bellovin, Esq. He is Jewish. He is a partner in the firm.

> The two other partners who assisted him in representing my case were Will Levin, Esq. and Susan Schneiderman, Esq. Both are Jewish.

> \*    \*    \*

> ... the SDNY refused sanctions against the Jewish attorneys at either DLA or Proskauer.

> \*    \*    \*

> The only assertion [that I had not included an index or declaration with the exhibits opposing summary judgment] is predicated on the word of the judicial administrator Lewis Kaplan—a Jew who

exhibited extremist behavior throughout the court proceedings. He lied.

\* \* \*

The SDNY is using court administration to deny U.S. citizens access to justice in cases that affect the interests of Jews.

\* \* \*

After several motions, the SDNY corrected certain of such obvious errors, but refused to review others. So hasty was the SDNY to manufacture dismissal for the Jews at DLA Piper that he did not bother to be accurate.

\* \* \*

The SDNY suppress the evidence to further perjury. The SDNY is fixing cases for Jews settled in the state of New York.

\* \* \*

However, as I prepared a Record on Appeal, I noticed that the SDNY had *excluded all of my letters.* The clerks of the Court only added to the docket those letter from the Jewish attorneys at Proskauer and Ballon Stoll. [emphasis in original].

\* \* \*

The primary [case] manager at the Second Circuit was Hezekiah Toft. I do not yet know if he is a Jew.

\* \* \*

I believe there is sufficient evidence in the forgoing [sic] to raise an inference that the Jewish attorneys at N.Y. law firms, administrator of the N.Y. state bar, staff at the N.Y. state and federal courts, and N.Y. District Office of the EEOC—most, if not all of whom are attorneys admitted to the New York state bar—are racketeering to protect the interest of Jews settled in the state of New York.

58. The Court denied the motion on March 18, 2010, stating that it was "entirely baseless and vexatious."

59. On March 25, 2010, Ms. Morisseau filed a motion to compel disclosure of acknowledgement forms from her former counsel, Ballon Stoll. In the motion, she repeated many of the statements in her prior motion and stated:

... Defendant had wantonly breached the Confidentiality Order with the specific intent to smear Ms. Morisseau's ("Plaintiff's") reputation after she engaged in protected activity against a Jewish practice group at DLA Piper ... [t]hese Jews' act was one of pure malice.

\* \* \*

The Jewish attorneys at Ballon Stoll did not bother to stamp documents confidential. They just assembled whatever they could and tossed it to Ms. Morisseau's opponents. These Jews' act was also one of pure malice.

Ms. Morisseau also filed a declaration in support of the motion in which she repeated many of the statements made in her declaration in support of the immediately preceding motion.

60. On March 26, 2010, the Court granted defendants' March 11, 2010 motion to compel Ms. Morisseau to comply with the information subpoena by April 5, 2010. Ms. Morisseau did not comply. Instead, on April 5, 2010, Ms. Morisseau moved to hold the April 5 deadline for compliance "in abeyance." She alleged that if the Second Circuit granted her pending motion to compel release of documents, she would have material to support a Rule 60(b) motion to vacate the December 2007 dismissal. The Court denied Ms. Morisseau's motion as without merit on April 6, 2010.

61. On April 8, 2010, the Court denied Ms. Morisseau's motions for production of

acknowledgement forms and her motions to recuse the Court.

62. Defendants moved, on April 20, 2010, to hold Ms. Morisseau in contempt for her willful noncompliance with the Court's March 26, 2010 order to respond to the information subpoena.

63. On April 23, 2010, Ms. Morisseau filed a notice of appeal from the Court's denial of her motions for production and recusal and she also moved for a stay of defendants' contempt motion.

64. The Court denied Ms. Morisseau's motion for a stay of defendant's contempt motion on April 27, 2010 and, on May 10, 2010, granted defendant's contempt motion. The Court added $3,000 in costs to defendants' judgment against Ms. Morisseau and ordered her to pay (a) $250 for each day of noncompliance with the subpoena during the period May 17–24, 2010; (b) $350 for each day during the period May 24–31, 2010; and (c) $500 for each day after May 31.

65. On May 19, 2010, Ms. Morisseau amended the notice of appeal she had filed on April 23, adding an appeal from the Court's May 10, 2010 contempt order. The Second Circuit dismissed the appeal, *sua sponte*, for lack of appellate jurisdiction on September 9, 2010.

### Findings As To The Specific Charges

The facts set forth above establish that, after her complaint was dismissed in *Morisseau I*, Ms. Morisseau commenced a series of unsupported and hate-filled public attacks against Judge Kaplan and lawyers she perceived are Jewish. The identification of a judge or lawyer as "Jewish" has no relevance to any legal claim made by Ms. Morisseau in either *Morisseau I* or *Morisseau II*. Those repeated statements, as well as the direct and implied accusations that Judge Kaplan is dishonest, violate a number of Disciplinary Rules and

Rules of Professional Conduct as reflected in the findings below. *See In re Paul G. Evans,* 801 F.2d 703, 706–7 (4th Cir.1986) (unsubstantiated allegations that judge had religious bias merited disbarment from federal court). Ms. Morisseau's persistent disregard of court orders and filing of baseless and duplicative motions likewise violates the Disciplinary Rules and Rules of Professional Conduct. Accordingly, the Committee makes the following findings as to the specific charges against Ms. Morisseau.

### A. Violations Of Disciplinary Rules In Effect Prior To April 1, 2009

#### 1. Violations Of Disciplinary Rule 7–106(C)(6)

■ Disciplinary Rule 7–106(C)(6) provides that, in appearing as a lawyer before a tribunal, a lawyer shall not engage in undignified or discourteous conduct which is degrading to a tribunal. By virtue of the conduct set forth in paragraphs 34 and 35, above, Ms. Morisseau violated Disciplinary Rule 7–106(C)(6).

#### 2. Violations Of Disciplinary Rule 7–102(A)(1)

■ Disciplinary Rule 7–102(A)(1) provides that, in the representation of a client, a lawyer shall not assert a position or take any other action on behalf of the client when the lawyer knows or when it is obvious that such action would serve merely to harass or maliciously injure another. By virtue of the conduct alleged in paragraphs 16, 19, 23, 29, 32, 34, 35, 37 and 38 above, Ms. Morisseau violated Disciplinary Rule 7–102(A)(1).

#### 3. Violations Of Disciplinary Rules 7–106(A) and (C)(7)

■ Disciplinary Rule 7–106(A) provides that a lawyer shall not disregard a

standing rule of a tribunal or a ruling of a tribunal made in the course of a proceeding; and Disciplinary Rule 7–106(C)(7) provides that, in appearing as a lawyer before a tribunal, a lawyer shall not intentionally or habitually violate any established rule of procedure or of evidence. By virtue of the conduct alleged in paragraphs 16 and 17(5) above, Ms. Morisseau violated Disciplinary Rules 7–106(A) and (C)(7).

### 4. Violations Of Disciplinary Rules 1–102(A)(1), (5) and (7)

Disciplinary Rule 1–102(A)(1) provides that a lawyer shall not violate a Disciplinary Rule; Disciplinary Rule 1–102(A)(5) provides that a lawyer shall not engage in conduct that is prejudicial to the administration of justice; and Disciplinary Rule 1–102(A)(7) provides that a lawyer shall not engage in any other conduct that adversely reflect on the lawyer's fitness as a lawyer. By virtue of the conduct alleged in paragraphs 16, 17(5), 19, 29, 32, 34, 35, 37 and 38 above, Ms. Morisseau violated Disciplinary Rules 1–102(A)(1), (5) and (7).

### B. Violations Of Rules Of Professional Conduct In Effect As Of April 1, 2009

### 1. Violations Of Rule of Professional Conduct 3.3(f)(2)

Rule of Professional Conduct 3.3(f)(2) provides that, in appearing as a lawyer before a tribunal, a lawyer shall not engage in undignified or discourteous conduct. By virtue of the conduct alleged in paragraphs 48, 50, 52, 56, 57 and 59 above, Ms. Morisseau violated Rule of Professional Conduct 3.3(f)(2).

### 2. Violations Of Rules of Professional Conduct 3.3(f)(3) and 3.4(c)

Rule of Professional Conduct 3.3(f)(3) provides that, in appearing as a lawyer before a tribunal, a lawyer shall not intentionally or habitually violate any established rule of procedure or of evidence; and Rule of Professional Conduct 3.4(c) provides that a lawyer shall not disregard a ruling of a tribunal made in the course of a proceeding. By virtue of the conduct alleged in paragraphs 48, 50, 52, 56, 57 and 59 above, Ms. Morisseau violated Rules of Professional Conduct 3.3(f)(3) and 3.4(c).

### 3. Violations Of Rule of Professional Conduct 3.1(a)

Rule of Professional Conduct 3.1(a) provides that a lawyer shall not bring or defend a proceeding, or assert or controvert issue therein, unless there is a basis in law and fact for doing so that is not frivolous. By virtue of the conduct alleged in paragraphs 48, 50, 52, 56, 57, 59 and 60 above, Ms. Morisseau violated Rule of Professional Conduct 3.1(a).

### 4. Violations Of Rules of Professional Conduct 8.4(a)(e) and (h)

Rule of Professional Conduct 8.4(a) provides that a lawyer shall not violate or attempt to violate the Rules of Professional Conduct; Rule of Professional Conduct 8.4(e) provides that a lawyer shall not engage in conduct that is prejudicial to the administration of justice; and Rule of Professional Conduct 8.4(h) provides that a lawyer shall not engage in any other conduct that adversely reflects on the lawyer's fitness as a lawyer. By virtue of the conduct alleged in paragraphs 47, 48, 50, 52, 56, 57, 59 and 60 above, Ms. Morisseau violated Rules of Professional Conduct 8.4(a)(e) and (h).

### Appropriate Discipline

Ms. Morisseau's behavior is unacceptable by any measure. As an attorney, she has responsibilities that are reflected in the former Disciplinary Rules and current Rules of Professional Conduct. She has repeatedly violated those rules and flouted her responsibilities as an attorney.

When charged with violating the applicable rules, she did not answer the charges. This Committee finds that Ms. Morisseau's conduct merits serious discipline.

Local Civil Rule 1.5(c)(2) provides that, in the case of an attorney who is not admitted to the bar of this Court, discipline for violations of the Disciplinary Rules or Rules of Professional Conduct may consist of a letter of reprimand or admonition, censure, or an order precluding the attorney from again appearing at the bar of this Court.

The Committee believes that in the egregious circumstances of this case, the appropriate discipline is to preclude Ms. Morisseau from appearing at the bar of this Court. This preclusion has no time limit. If Ms. Morisseau seeks admission to the bar of this Court in the future, including admission *pro hac vice,* she must apply pursuant to Local Civil Rule 1.3 and also satisfy this Committee that she is duly qualified and worthy of the privilege of appearing as an attorney before this Court.

SO ORDERED.