IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 40467

| STATE OF IDAHO, | ) | 2014 Unpublished Opinion No. 627 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: July 17, 2014 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| JASON JAY WARD, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County. Hon. Randy J. Stoker, District Judge.

Judgment of conviction for rape, affirmed.

Clayne S. Zollinger, Jr., Rupert, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent. Jessica M. Lorello argued.

_____

GUTIERREZ, Chief Judge

Jason Jay Ward appeals from his judgment of conviction after a jury found him guilty of rape. For the reasons that follow, we affirm.

I.

FACTS AND PROCEDURE

In the early morning hours, a female (the victim) called 911 and reported that she had been raped. Although she initially gave one description of the alleged perpetrator and the vehicle driven by the alleged perpetrator, the victim identified Ward as the perpetrator the next day. Ward was charged with rape by criminal complaint and was bound over to the district court. Subsequently, an information was filed alleging that Ward committed rape. An amended information charged Ward with rape and alleged that he was a persistent violator. Ward then entered into an Idaho Criminal Rule 11 plea agreement, agreeing to plead guilty to the rape charge in exchange for the State agreeing to dismiss the persistent violator allegation and recommend a unified sentence of fifteen years, with seven years determinate. At the change of

1

plea hearing, Ward acknowledged that he had sexual intercourse with the victim, that the victim resisted, and that he overcame that resistance by force or violence.

Prior to sentencing, Ward substituted counsel and filed a motion to withdraw the guilty plea. At a hearing on the motion to withdraw the guilty plea, the district court found that Ward relied on a misstatement of law from Ward's original attorney when he entered his guilty plea. The court then determined that Ward's plea was not knowing and voluntary and that Ward had offered a just reason to withdraw his plea. Hence, the court granted Ward's motion to withdraw the guilty plea, and the case proceeded to trial.

At trial, the State's first witness was the victim. She testified that she had spent the day boating with her twin sister, Ward, and her ex-boyfriend, who was also a friend of Ward. After the victim and her twin sister made their way home, Ward and the ex-boyfriend picked up the victim that evening and drove to Ward's house in the ex-boyfriend's car. At Ward's house, the group listened to music and consumed beer. The party of three grew when two young women, who were invited over by the ex-boyfriend, arrived, but they left a short time later. Later in the evening, the victim had an argument with her ex-boyfriend. Although the ex-boyfriend was supposed to give the victim a ride home, he left Ward's house and drove away. After trying to contact the ex-boyfriend, and declining Ward's offer to drive her to her house for $10 in gas money, the victim started walking from Ward's house and attempted to call her twin sister. Approximately twenty minutes after she started walking, Ward pulled up in his truck, got out of the truck while not wearing any pants or underwear, and effectively forced the victim into the truck. Ward subsequently raped the victim near a canal, and she was dropped off by Ward at a different location.

The State then presented testimony from the officer who responded to the victim's 911 call, from the paramedic who was in the ambulance that took the victim to the hospital, from the hospital nurse who completed a sexual assault kit on the victim and acquired other evidence from the victim, from the local evidence technician, and from employees of the Idaho State Police Forensic Services laboratory. As to the evidence obtained from the victim, the nurse testified that she presented a sealed evidence box to a non-testifying law enforcement officer. The local evidence technician testified that he received the evidence box from the nontestifying law enforcement officer and testified that he forwarded the evidence on to the Idaho State Police Forensic Services laboratory. This evidence was then tested. Among the evidence were vaginal

swabs collected from the victim with DNA on them that matched samples provided by Ward. The State closed its case by presenting testimony from the deputy sheriff who interviewed Ward and testimony from the 911 operator.

The defense first called the ex-boyfriend. He testified, contrary to the victim's testimony, that he watched the victim and Ward leave Ward's house in Ward's truck. On cross-examination, the prosecutor elicited that the ex-boyfriend was on felony probation for intimidation of a witness (the victim in this case). Ward then took the stand in his own defense. Ward claimed that he and the victim left together, that he was wearing pants when he left, and that he and the victim had consensual sexual intercourse. The prosecutor, on cross-examination, impeached Ward with statements Ward made at his guilty plea proceeding admitting to rape. The jury found Ward guilty of rape, and he admitted to being a persistent violator. Ward appeals.

## II.

## ANALYSIS

Ward made statements at his guilty plea proceeding admitting to rape. The first issue is whether the prosecutor's use of these statements to impeach Ward at trial, after his plea was withdrawn, violated Ward's constitutional rights. Ward also argues that the prosecutor committed misconduct during the questioning of a defense witness and that the court erred by admitting certain evidence without a proper chain of custody having been established or shown. Finally, if we determine that more than one error was committed below, but we nonetheless determine that each individual error is harmless, Ward contends that the cumulative error doctrine applies.

### A.     Impeachment with Statements Made During the Guilty Plea Proceedings

Ward made statements at his guilty plea proceeding admitting to rape. The issue is whether the prosecutor's use of these statements to impeach Ward at trial, after his plea was withdrawn, violated Ward's constitutional rights.[1] As Ward acknowledges, he did not object to the impeachment below. Accordingly, we must apply the *State v. Perry*, 150 Idaho 209, 245 P.3d 961 (2010), fundamental error analysis:

---

[1]     The prosecutor used the statements to impeach Ward in accord with Idaho Rule of Evidence 410(b)(3).

> [W]e hold that in cases of unobjected to fundamental error: (1) the defendant must demonstrate that one or more of the defendant's unwaived constitutional rights were violated; (2) the error must be clear or obvious, without the need for any additional information not contained in the appellate record, including information as to whether the failure to object was a tactical decision; and (3) the defendant must demonstrate that the error affected the defendant's substantial rights, meaning (in most instances) that it must have affected the outcome of the trial proceedings.

*Id.* at 226, 245 P.3d at 978 (footnote omitted). Assuming without deciding that Ward has demonstrated that "one of his unwaived constitutional rights was plainly violated," *id.*, we advance to the third step of *Perry*.

The third step of *Perry* requires that the defendant "bear[] the burden of proving there is a reasonable possibility that the error affected the outcome of the trial." *Id.* Ward's opening brief only directs the Court to a quote made by the trial court, and Ward articulates that "[i]t is difficult not to assume the testimony of [Ward] influenced the jury's finding of guilt." The State contends that Ward has not shown that there is a reasonable possibility that the error affected the outcome of the trial because of the overwhelming evidence of Ward's guilt presented at trial. As to the quote selected by Ward, the State argues that the quote relates to other testimony about the events of the night, such as how much alcohol was consumed.

During sentencing, the district court proceeded to analyze the factors set forth in Idaho Code § 19-2521 that weigh against imposing imprisonment. One of the factors for the court to consider is whether "[t]here were substantial grounds tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense." I.C. § 19-2521(2)(d). The district judge in Ward's case considered the factor and explained how he considered the factor:

> Were there substantial grounds tending to excuse or justify the defendant's criminal conduct though failing to establish a defense? We all know that alcohol was at the root of this incident that night. I think Mr. Ward was intoxicated. I think [the victim] was intoxicated. The degree of that intoxication on both parts is, I suppose, up in the air, but I remember very clearly the testimony that came out at trial that she was, [the victim] was a .08 at the time of testing in the hospital sometime after this incident. I think that's legal intoxication in the state of Idaho. I have no idea where Mr. Ward's alcohol level was, but it wouldn't surprise me if it was greater than that, given the amount of alcohol that everybody testified they consumed that night.
>     I bring up that point because of this: I don't think that this jury heard, you know, the truth of what really happened that night because parts of this, the testimony from both sides in this case, some of it just doesn't make any sense [to] me. I can go through and lay out all the reasons for that, but the conclusion that I

4

> come to *for purposes of sentencing* is I don't think we got the whole story. That's what's troubling about this case.
>
> So I guess what I'm saying here is that there are some--there is some explanation as to how this ultimate sexual activity occurred. I'm not saying it's justified. I'm just saying that those are factors that I take a look at.

(Emphasis added.) Ward has honed in on the fact that the district judge, in considering the factor, noted that he was not sure that the jury heard the complete truth from either side as it relates to provocation. Yet the district court also recognized, in analyzing another factor, there was more than enough evidence to support the conclusion that the victim was forcibly raped:

> I don't know what this jury was thinking, but as I sat and listened to the evidence in this case, I had a hard time justifying in my own mind how this could have been a consensual sexual encounter when [the victim] ends up with the type of physical injuries that were described during the course of this trial. That's totally inconsistent to me with anything approaching consensual sex.
>
> I recognize--I don't know whether this is a situation that started off in a consensual way and got out of hand, or again, whether we just haven't heard all of the testimony or the truth of what occurred here. But again, it really doesn't matter because you stand convicted of a violent sexual offense.

In this case, there was overwhelming testimony and evidence for the jury to conclude that the victim was raped, even if Ward's statements during the guilty plea proceeding had not been admitted. Illustrative of this is the fact that, after two days of testimony, the jury was excused for deliberation at 2:10 p.m. and returned at 3:50 p.m. with a guilty verdict against Ward. Given the fact that testing of vaginal swabs revealed DNA that matched the sample provided by Ward, there was no question that Ward had sexual intercourse with the victim. The remaining issue for the jury, in essence, was whether the victim's testimony was credible. Supporting the credibility of the victim's testimony was the testimony of the State's other witnesses. The officer who responded to the 911 call testified that she found the victim crying, incoherent, and distraught. Moreover, the officer noticed that the victim was dirty and had weeds and debris on her. The paramedic, too, noted that the victim had weeds in her hair, and also recalled that the victim had ripped clothing, was disheveled and emotionally distraught, and recalled that she observed red marks on the victim. Similarly, the hospital nurse witnessed redness on the victim's face, a bite mark, scratches, and early stages of bruising on the victim. And like the other witnesses, she too saw that the victim had debris in her hair and on her clothing. Although Ward presented testimony from the victim's ex-boyfriend, he was not near the canal where the rape occurred and the jury may have discounted his testimony because he was on felony probation for intimidation

of the victim in this case. Given the evidence, we are not persuaded that there is a reasonable possibility that the assumed error in admitting the guilty-plea-proceeding statements affected the outcome of the trial. Accordingly, Ward has not satisfied the third *Perry* step.

**B.      Prosecutorial Misconduct**

Ward contends that the prosecutor committed misconduct while cross-examining a defense witness, the victim's ex-boyfriend. At trial, defense counsel requested a sidebar conference after the prosecutor asked the ex-boyfriend, "When you invited the two girls . . . over, were you trying to get some girls for [Ward]?" Following the sidebar, the prosecutor asked the ex-boyfriend if he was to give the victim a ride home. After acknowledging that he was and explaining the victim's original plan of being driven home by her twin sister, the ex-boyfriend was asked, "And you left [the victim] there with [Ward] alone; correct?" The ex-boyfriend responded, "Yes, momentarily." The record then reveals that the prosecutor stated, "Momentarily. And it's your--" before Ward's defense counsel interjected, "Judge, we would request the prosecutor not make gratuitous comments and noises in front of the jury." The judge responded that he "didn't observe anything," and Ward's defense counsel noted for the record that the prosecutor "laughed and said 'momentarily' like she was mocking the witness."

At a recess, defense counsel moved for a mistrial, arguing that "asking the question essentially if [the ex-boyfriend] was pimping for the defendant to get women over there" was prosecutorial misconduct and arguing that the question was posed "just to inflame the passions of the jury . . . ." The prosecutor stated her reason for asking the question:

> Your Honor, I certainly don't believe that it was prosecutorial misconduct. It's certainly relevant to this matter. [The ex-boyfriend] did invite two girls over there. There has been a lot of discussion about those two girls. I wanted to know why he would have invited those two girls over there when his ex-girlfriend [(the victim)] was there. The testimony has been she was trying to get back into a relationship with [the ex-boyfriend]. There has been some conflicting testimony, I believe, as to who was trying to get back into the relationship, but I certainly think that it's proper inquiry to determine what the motive was for having those two girls to come over.

The district court stated that it interpreted the question as asking for the ex-boyfriend's motive and did not construe it as amounting to prosecutorial misconduct. Thus, the district court denied

the motion for mistrial.[2] Ward asserts that both incidents at trial amounted to prosecutorial misconduct.[3]

Although our system of criminal justice is adversarial in nature, and the prosecutor is expected to be diligent and leave no stone unturned, the prosecutor is nevertheless expected and required to be fair. *State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007). However, in reviewing allegations of prosecutorial misconduct we must keep in mind the realities of trial. *Id.* A fair trial is not necessarily a perfect trial. *Id.* When there has been a contemporaneous objection we determine factually if there was prosecutorial misconduct, then we determine whether the error was harmless. *Id.*; *State v. Hodges*, 105 Idaho 588, 592, 671 P.2d 1051, 1055 (1983); *State v. Phillips*, 144 Idaho 82, 88, 156 P.3d 583, 589 (Ct. App. 2007). A conviction will not be set aside for small errors or defects that have little, if any, likelihood of having changed the results of the trial. *State v. Pecor*, 132 Idaho 359, 367-68, 972 P.2d 737, 745-46 (Ct. App. 1998). Where prosecutorial misconduct is shown, the test for harmless error is whether the appellate court can conclude, beyond a reasonable doubt, that the result of the trial would not have been different absent the misconduct. *Id.* at 368, 972 P.2d at 746.

We are persuaded that the prosecutor's question did not amount to prosecutorial misconduct. In context, the question at issue seeks to understand the ex-boyfriend's motive for inviting the young women over to Ward's house. There had already been testimony from the victim and from the ex-boyfriend during direct examination about the young women invited over to Ward's house. On cross-examination, the prosecutor questioned the ex-boyfriend concerning his relationship with Ward. Further, the prosecutor asked the ex-boyfriend whether he knew if Ward was married and then whether he knew if Ward had a girlfriend living at Ward's home. Following this line of questioning, the prosecutor posited the question at issue. Although the

---

[2]    Although there was a motion for mistrial, Ward's arguments on appeal only assert that there was prosecutorial misconduct and not that the district court erred by denying the motion for mistrial. In any event, the analysis of a denied motion for mistrial on appeal also reduces down to whether the error prompting the motion for mistrial was, indeed, harmless. *See State v. Urquhart*, 105 Idaho 92, 95, 665 P.2d 1102, 1105 (Ct. App. 1983).

[3]    Ward implicitly asserts that defense counsel's actions--calling for a sidebar and interjecting--amounted to objections. The State does not challenge this assertion, although it focuses on the motion for mistrial. We assume, without deciding, that Ward's defense counsel's actions amounted to objections because we would reach the same conclusion even if we applied the *State v. Perry*, 150 Idaho 209, 245 P.3d 961 (2010), fundamental-error analysis.

relevance of the question is debatable, the question did not rise to prosecutorial misconduct. The question was not inflammatory and, contrary to Ward's argument, does not suggest the boyfriend was "pimping" for Ward.

As to the other assertion of prosecutorial misconduct concerning the alleged remark and noise, there is no evidence in the record that the prosecutor committed misconduct, and the district court judge witnessed no questionable noise or remark. Accordingly, there is no evidence that would support a finding of prosecutorial misconduct for the second incident.

## C. Chain of Custody

Ward additionally asserts that the district court erred by admitting certain evidence without a proper chain of custody having been established or shown. At trial, the State produced test results of evidence that was collected at the hospital, transferred from a nurse to a law enforcement officer and then to a local evidence technician, before being sent to the Idaho State Police Forensic Services laboratory. The law enforcement officer, who collected the sealed evidence box from the nurse and transferred the evidence box to the local evidence technician, did not testify. Defense counsel objected, contending that the State had not laid a proper foundation because it had not established a chain of custody. The district court denied the motion based on its determination that defense counsel invited the error by moving to exclude the law enforcement officer from testifying and the court's determination that there was sufficient foundation from the testimony of the nurse and the local evidence technician.

The decision whether to admit evidence at trial is generally within the province of the trial court. A trial court's determination that evidence is supported by a proper foundation is reviewed for an abuse of discretion. *State v. Gilpin*, 132 Idaho 643, 646, 977 P.2d 905, 908 (Ct. App. 1999). Therefore, a trial court's determination as to the admission of evidence at trial will only be reversed where there has been an abuse of that discretion. *State v. Zimmerman*, 121 Idaho 971, 973-74, 829 P.2d 861, 863-64 (1992). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the lower court reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

8

On appeal, the State, citing *Dawson v. Cheyovich Family Trust*, 149 Idaho 375, 382-83, 234 P.3d 699, 706-07 (2010), first avers that we should decline to consider this argument because of the lack of authority in Ward's opening brief. Although the argument in Ward's opening brief is concise, it is not "too indefinite to be heard by the Court." *Id.* at 383, 234 P.3d at 707 (quoting *Bach v. Bagley*, 148 Idaho 784, 790, 299 P.3d 1146, 1152 (2010)). Therefore, we address the merits of the argument.

The State argues that the law enforcement officer's testimony was not necessary to establish foundation because there was no evidence of tampering. We agree. Idaho Rule of Evidence 901(a) generally provides that the required authentication of evidence "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." I.R.E. 901(a). "Often, the party offering evidence establishes the chain of custody in order to create a presumption that it was not materially altered during the chain of custody." *Gilpin*, 132 Idaho at 647, 977 P.2d at 909. Once the proponent of the evidence has established a chain of custody, "[t]he burden then shifts to the defendant to overcome the presumption, and the defendant must make some showing that the evidence was tampered or meddled with." *Id.* "The trial court must then determine that the proffered evidence has not been changed in any material respect." *Id.*

The Idaho Supreme Court has upheld the admission of evidence, even though a witness involved in the chain of custody did not testify at trial. In a case analogous to this one, *State v. Coburn*, 82 Idaho 437, 354 P.2d 751 (1960), a doctor drew a blood sample and gave the blood sample to a nurse. The nurse sealed and marked the blood sample before giving it to the sheriff. The sheriff then delivered the blood sample to a hospital nurse, who indicated that she would put the blood sample in the refrigerator for the evidence technician. The evidence technician subsequently tested the blood sample. Coburn challenged the admission of evidence of the blood test, arguing that the evidence "was not properly identified nor was any attempt made by respondent to prove the blood tested by the [technician] was the blood of appellant." *Id.* at 447, 354 P.2d at 757. Although the hospital nurse involved in the chain of custody did not testify, the Court stated that "the circumstances sufficiently disclose the identification of the samples tested as being those drawn from appellant by [the doctor]. Nor is there any evidence which would cast the slightest inference that any irregularity occurred after the samples were delivered to the hospital by [the sheriff]." *Id.* Thus, the Court determined the evidence was properly admitted.

9

Here, the nurse who obtained the evidence from the victim testified that she sealed the box. Although the law enforcement officer who obtained the evidence from the nurse and transported it to the evidence technician did not testify, the evidence technician did testify. He stated that the seals were intact when he received the evidence, further stating that "the chain of custody and the seal has to be on there before I'll even accept it into evidence so I always check." There was no testimony that the evidence box was tampered with. Rather, there was sufficient testimony for the district court to find that the evidence collected at the hospital was the same evidence received by the local evidence technician and then subsequently tested. Accordingly, we cannot say that the district court abused its discretion by admitting the evidence, even though one law enforcement officer in the chain of custody did not testify.

## III.

## CONCLUSION

As to the first issue of whether the prosecutor's use of Ward's statements made during the guilty plea proceeding to impeach Ward at trial, after his plea was withdrawn, violated Ward's constitutional rights, we conclude that Ward has not sustained his *Perry* burden. Assuming without deciding that Ward demonstrated that one of his unwaived constitutional rights was plainly violated, Ward has not shown that there is a reasonable possibility that the error affected the outcome of the trial.

As to the issue of prosecutorial misconduct, we are persuaded that the first instance did not amount to prosecutorial misconduct. As for the second instance of alleged prosecutorial misconduct, there is no evidence that would support a finding of prosecutorial misconduct for the second incident.

As to the chain-of-custody issue, we cannot say that the district court abused its discretion by admitting the evidence, even though one law enforcement officer in the chain of custody did not testify. There was sufficient testimony for the district court to find that the evidence collected at the hospital was the same evidence received by the local evidence technician and then subsequently tested.

Because we identified one potential error, we need not address Ward's cumulative error argument. For these reasons, Ward's judgment of conviction is affirmed.

Judge LANSING and Judge GRATTON **CONCUR.**

10