# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket Nos. 34712/35334

WAYNE DAWSON, )
)
    Plaintiff-Appellant, )
)
v. )
)
CHEYOVICH FAMILY TRUST, VASA N. )
BACH FAMILY TRUST, )
)
    Defendants, )
)
and )
)
JOHN N. BACH, )
)
    Intervenor-Respondent. )
_____ )

Boise, May 2010 Term

2010 Opinion No. 65

Filed: June 4, 2010

Stephen W. Kenyon, Clerk

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Teton County. The Honorable Jon J. Shindurling and Darren B. Simpson, District Judges.

The decision of the district court is <u>affirmed in part</u> and the case is <u>remanded</u>.

Smith & Banks, PLLC, Idaho Falls, for appellant.

John N. Bach, Driggs, respondent pro se.

_____

J. JONES, Justice.

    Wayne Dawson appeals from various district court orders that resulted in John N. Bach receiving a three-quarter interest in certain real property. We remand the case to the district court for it to rule on Dawson's I.R.C.P. 60(b)(6) motion.

1

# I.

On December 18, 2001, attorney Alva Harris, purportedly on behalf of Wayne Dawson and Jack Lee McLean,[1] initiated a quiet-title action against the Cheyovich Family Trust and the Vasa N. Bach Family Trust. The complaint referred to a 1994 land transaction in which the Jack Lee McLean Family Trust, the Cheyovich Family Trust, the Dawson Family Trust, and the Targhee Powder Emporium each obtained an undivided one-quarter interest in a 40-acre parcel of real estate known as the "Peacock Property." In the complaint, Dawson claimed an undivided one-half interest in the Peacock Property that he claimed to have acquired through his interest in the Dawson Family Trust and the Targhee Powder Emporium.

The "Targhee Powder Emporium" was an unregistered business entity used by John N. Bach to acquire various land interests in Teton County between 1992 and 2000. *Bach v. Miller*, 148 Idaho 549, 550, 224 P.3d 1138, 1139 (2010). At the time of the land transaction in 1994, Bach had taken no action to establish a legal entity under the name of the Targhee Powder Emporium or to file an assumed business name certificate. *Id*. However, on November 13, 2000, in apparent anticipation of the impending litigation, Alva Harris filed incorporation papers for Targhee Powder Emporium, Inc., and filed a certificate of assumed business name stating that the corporation would be doing business as the Targhee Powder Emporium, Ltd. *See id.* On November 21, 2000, Targhee Powder Emporium, through its Vice President Jack Lee McLean, transferred its purported interest in the Peacock Property to Wayne Dawson. The deed reflecting Dawson's interest was recorded in Teton County by Alva Harris. Just a year later, Harris brought the quiet-title complaint on Dawson's behalf alleging that "Wayne Dawson . . . was in reality the de facto undisclosed principal known as 'Targhee Powder Emporium, Ltd.' . . . at the time of the original purchase," and that the Targhee Powder Emporium had transferred its interest to Dawson.[2] Accordingly, the complaint alleged that Dawson held a one-half interest, McLean held a one-fourth interest, and the Cheyovich Family Trust held the other one-fourth interest in the Peacock Property.

On January 7, 2002, Bach attempted to answer the complaint on behalf of the Cheyovich Family Trust, the Vasa N. Bach Family Trust, and the Targhee Powder Emporium. While the

---

[1] The complaint was verified by McLean, but was not signed by Dawson.
[2] The Targhee Powder Emporium, Inc., was administratively dissolved on February 8, 2007, and eight days later, Bach registered the Targhee Powder Emporium, Inc., and filed a Certificate of Assumed Business Name indicating that Bach was the owner of the business. *See Miller*, 148 Idaho at 550, 224 P.3d at 1139.

district court concluded that Bach was not entitled to represent any entity in the suit, it granted Bach's motion to intervene in the case as to his personal interests only. In his Complaint in Intervention, Bach claimed that he was the rightful owner of the Targhee Powder Emporium and, therefore, he asked the district court to declare that he was entitled to "at least one-fourth" interest in the property.

Shortly thereafter, Bach initiated his own quiet-title action against Wayne Dawson and Jack Lee McLean in Teton County Case No. CV-02-208 claiming that he had an undivided one-fourth interest in the Peacock Property. *Bach v. Bagley*, No. 31717, 2010 WL 937270, at *2 (Idaho Mar. 17, 2010).[3] On February 23, 2004, the district court entered a default judgment in that case against Dawson quieting a one-fourth title in Bach and holding that Dawson had *only* an undivided one-fourth interest in the Peacock Property. Dawson did not appeal the default judgment.

Subsequently, in the case at bar, Bach moved on October 25, 2004, for the dismissal of the case with prejudice for lack of diligent prosecution. The district court, however, refused to dismiss the case because the plaintiffs' delay was attributable to the interim suit filed by Bach in Teton County Case No. CV-02-208.

On July 2, 2007, Bach again moved for dismissal of the case and for summary judgment on his counterclaims. On September 11, 2007, the district court ordered the dismissal of the plaintiffs' case with prejudice for lack of diligent prosecution and granted summary judgment in favor of Bach on all of his claims. The district court's memorandum opinion and its subsequent order quieting title were both signed by Judge Shindurling, but were authored in their entirety by Bach. Among other holdings, the memorandum opinion held that: (1) Bach was the rightful owner of the Targhee Powder Emporium; (2) the third-party defendants violated the "Idaho Racketeering RICO Act and even the Federal RICO act"; (3) "all third party defendants 'did steal, convert, destroy and deprive [Bach] of his dba names and business identities of TARGHEE POWDER EMPORIUM, LTD, UNLTD, and INC.'"; (4) Bach was entitled to three-fourths interest in the Peacock Property by virtue of Dawson's default in Teton County Case CV-02-208, with the other quarter interest being retained by the Cheyovich Family Trust; (5) Dawson was barred from enforcing an oral agreement to sell his interest in the Peacock Property to Bach by the applicable statute of limitations; (6) there was a permanent injunction against all the third-

---

[3] The case also involved numerous other defendants and claims. *Id*.

3

party defendants prohibiting them, among other things, from bringing any further actions against Bach; and (7) Bach was entitled to sole interest in two other properties—a 33-acre parcel known as the "Drawknife Property" and an 8.5-acre parcel known as the "Zamona Casper Property."

On October 17, 2007, attorney Marvin M. Smith substituted into the case as the attorney of record for Dawson. Dawson then filed a Motion for Reconsideration and a Memorandum in Support of Motion for Reconsideration arguing, in pertinent part, that he had a meritorious defense because he never authorized Alva Harris to initiate the underlying lawsuit in 2001 and he was not aware of the lawsuit until he received a phone call on October 10, 2007, explaining that the opinion and judgment had been entered. Additionally, Dawson alleged a new set of facts surrounding the 1994 purchase of the Peacock Property. Specifically, Dawson alleged that Bach approached him about buying the Peacock Property with three other investors for $120,000, each investor contributing $30,000 for their quarter interest. Dawson agreed to contribute his $30,000 share. Bach obtained a power of attorney from Dawson, allowing Bach to sign the closing documents on behalf of Dawson. However, the sale receipts and closing documents indicate that the actual purchase price of the property was $60,000, with Dawson contributing $30,000, Jack Lee McClean contributing $15,000, and the Cheyovich Family Trust contributing $15,000. Dawson alleged that Bach did not contribute any money towards the purchase price, but obtained a one-quarter interest in the property.

Furthermore, Dawson brought a separate I.R.C.P. 60(b)(6) motion to set aside the district court's September 11, 2007, memorandum opinion and judgment on the basis that, among other things, the district court's judgment was directly contrary to the default judgment entered by Judge St. Clair in Teton County Case CV-02-208 which held that Dawson had *only* an undivided one-fourth interest in the Peacock Property. Moreover, Dawson brought a motion for sanctions against Bach, arguing that he improperly communicated with a represented party in violation of the Idaho Rules of Professional Conduct.

In its memorandum decision, the district court, now with Judge Darren B. Simpson presiding,[4] denied the plaintiffs' motion for reconsideration, holding that: (1) Dawson's lack of knowledge of the underlying lawsuit was not grounds to grant the motion for reconsideration, but instead served as grounds for an independent action against Harris, and (2) Dawson's interest in the Peacock Parcel was not new evidence sufficient to justify a reconsideration of the district

---

[4] Judge Shindurling recused himself because Marvin Smith was representing his adult daughter in an unrelated case.

4

court's ruling. The district court did not issue a ruling on Dawson's Rule 60(b)(6) motion, but denied plaintiffs' motion for sanctions against Bach. While the district court acknowledged that Bach improperly communicated directly with the opposing parties in the lawsuit, the court simply chose not to issue sanctions.

After the district court entered its memorandum decision, Dawson filed a motion to alter or amend the September 11, 2007, opinion and judgment on the basis that they were in direct conflict with the default judgment entered in Teton County Case No. CV-02-208. Before ruling on the plaintiffs' motion, the district court entered its First Amended Judgment, which narrowed the scope of the September 11, 2007, opinion and judgment to include only Bach's three-fourths interest in the Peacock Property while eliminating any mention of the Drawknife Property or the Zamona Casper Property.[5] Then, on July 2, 2008, the district court denied the plaintiffs' motion to amend or alter the judgment, holding that Dawson did not offer any authority in support of the proposition that a conflict between two district court judgments can constitute a sufficient basis to alter or amend a judgment.

On May 20, 2008, Dawson appealed to this Court, arguing that the district court erred by: (1) failing to rule on the 60(b)(6) motion; (2) denying the motion for reconsideration; (3) entering the First Amended Judgment; (4) denying the motion to alter or amend the judgment; and (5) denying the motion for sanctions. Bach then cross-appealed on June 10, 2008.

## II.

The following issues are presented on appeal: (1) whether the district court erred by failing to issue a ruling on Dawson's 60(b) motion; (2) whether the district court erred by denying Dawson's motion for sanctions; and (3) whether Bach's claims have been preserved under I.A.R. 35(a)(6).

## III.

### A.

Dawson's first argument on appeal is that the district court erred by failing to rule on his 60(b)(6) motion. The interpretation of the Idaho Rules of Civil Procedure is a matter of law over

---

[5] Dawson argues on appeal that the rulings in this case have deprived him of his interest in the Zamona Casper Property. However, while the district court's September 11, 2007, opinion and judgment purported to quiet sole title in Bach in the Zamona Casper Property, the First Amended Judgment entered on May 27, 2008, redacted the opinion to include a determination of the respective property rights in the Peacock Property *only*, specifically removing any mention of the Zamona Casper Property. Consequently, this action has no bearing on the respective property interests in the Zamona Casper Property.

5

which this Court has free review. *Canyon County Bd. of Equalization v. Amalgamated Sugar Co.,* 143 Idaho 58, 60, 137 P.3d 445, 447 (2006). The decision to grant or deny a motion under I.R.C.P. 60(b) is committed to the discretion of the district court. *Pullin v. City of Kimberly,* 100 Idaho 34, 36, 592 P.2d 849, 851 (1979).

> A trial court's decision whether to grant relief pursuant to I.R.C.P. 60(b) is reviewed for abuse of discretion. The decision will be upheld if it appears that the trial court (1) correctly perceived the issue as discretionary, (2) acted within the boundaries of its discretion and consistent with the applicable legal standards, and (3) reached its determination through an exercise of reason. A determination under Rule 60(b) turns largely on questions of fact to be determined by the trial court. Those factual findings will be upheld unless they are clearly erroneous. "If the trial court applies the facts in a logical manner to the criteria set forth in Rule 60(b), while keeping in mind the policy favoring relief in doubtful cases, the court will be deemed to have acted within its discretion."

*Waller v. State, Dep't of Health & Welfare,* 146 Idaho 234, 237–38, 192 P.3d 1058, 1061–62 (2008) (internal citations omitted) (quoting *Idaho State Police ex rel. Russel v. Real Prop. Situated in the County of Cassia*, 144 Idaho 60, 62, 156 P.3d 561, 563 (2007)).

Under I.R.C.P. 60(b)(6), a court may relieve a party from a final judgment, order, or proceeding for "any . . . reason justifying relief from the operation of the judgment." Idaho R. Civ. P. 60(b)(6). "[A]lthough the court is vested with broad discretion in determining whether to grant or deny a Rule 60(b) motion, its discretion is limited and [the motion] may be granted only on a showing of 'unique and compelling circumstances' justifying relief." *Miller v. Haller,* 129 Idaho 345, 349, 924 P.2d 607, 611 (1996) (quoting *In re Estate of Bagley,* 117 Idaho 1091, 1093, 793 P.2d 1263, 1265 (Ct. App. 1990)).

The district court erred by failing to issue a ruling on Dawson's Rule 60(b)(6) motion. *See Montgomery v. Montgomery*, 147 Idaho 1, 6–7, 205 P.3d 650, 655–66 (2009) (holding that the trial court abused its discretion by failing to rule on the admissibility of certain evidence prior to granting summary judgment); *see also Miramar Hotel Corp. v. Frank B. Hall & Co. of California*, 210 Cal. Rptr. 2d 114, 115 (Cal. Ct. App. 1985) (holding that "a trial court's failure to issue a [ruling] when there has been a timely request therefor is per se reversible error"). Even were this Court to deem the district court's silence as a tacit denial of Dawson's Rule 60(b)(6) motion, the district court's unsupported denial is still an abuse of discretion. *See, e.g., Gutierrez v. Mass. Bay Transp. Auth.,* 772 N.E.2d 552, 560 (Mass. 2002) (explaining that a trial court's

failure to rule on a motion is effectively a denial of the motion). The district court's failure to rule on the motion leaves this Court without an adequate basis upon which to understand the premise behind the district court's determination, and thus the district court abused its discretion by failing to issue a ruling on Dawson's Rule 60(b)(6) motion.

Additionally, the facts of this case may constitute unique and compelling circumstances sufficient to justify relief under I.R.C.P. 60(b)(6). First and foremost, the relief granted by the district court in the September 11, 2007, opinion and quiet-title judgment, and the subsequent First Amended Judgment, is inconsistent with the relief sought by Bach in his March 26, 2002, complaint in intervention. The district court is not authorized to grant relief that is inconsistent with the pleadings and evidence in the case. *Jones v. State*, 85 Idaho 135, 147, 376 P.2d 361, 368 (1962). In Bach's complaint, he admits that Dawson obtained an "undivided one-fourth ownership [sic]" interest in the Peacock Property. After some incomprehensible ramblings about a purported violation of the Idaho Racketeering and Corrupt Influence Act, Bach requests "[t]he quieting of at least one-fourth title, ownership, economic worth and benefits in/to said real property." At no point in the complaint does Bach plead that he is entitled to more than a one-fourth interest in the Peacock Property. Furthermore, there are no allegations in the complaint that would entitle Bach to any affirmative relief. Instead, Bach's complaint in intervention states a general denial that Dawson is entitled to *more than* a one-fourth interest in the property. Therefore, the discrepancy between Bach's complaint and the remedy ordered by the district court may be a unique and compelling circumstance upon which relief under a Rule 60(b)(6) motion may be justified.

Second, the relief granted by the district court in the September 11, 2007, opinion and quiet title judgment is premised upon a gross mischaracterization of the holding in Teton County Case No. CV-02-208. While it is difficult, if not impossible, to ascertain the rationale and basis behind the convoluted and often unintelligible September 11, 2007, opinion and quiet-title judgment, it appears that it was premised on the proposition that the default judgment entered in No. CV-02-208 "mandated the awarding/quieting sole title" in Bach to the Peacock Property. This is further demonstrated in Bach's summary judgment motion, which reads:

> On Feb. 23, 2004, the Court in Teton CV 02-208 issued, despite affiant's requests a limited AMENDED DEFAULTTJUDGMENT [sic] AGAINST WAYNE DAWSON, A [sic] copy of said AMENDED DEFAULT JUDGMENT, is attached hereto marked as <u>EXHIBIT "3"</u>. Such judgment as to any appeal rights

7

by WAYNE DAWSON is final as he has failed to file any notice of appeal therefrom, and most, significantly, he never attempt [sic] to file, nor did he ever seek leave to file a counterclaim seeking to have any interest, title, etc., established in himself in said Peacock Parcel or said 8.5 acre parcel. Affiant, did file a notice of appeal, and has raised per said appeal, still awaiting the completion of both the Clerk's and Reporter's Transcripts on appeal, the issues that WAYNE DAWSON because of his pleading deficiencies and fraud, grant theft of affiant's prope-ty [sic] interests and titles in said parcels, has lost all claims of any title, equity or any interests or holdings whatsoever in said parcels.

However, the default entered against Dawson in Teton County Case No. CV-02-208 held instead that "Dawson has only an undivided one-fourth interest in the Peacock 40 acres in Teton County . . . ." Thus, the district court's September 11, 2007, opinion and quiet title judgment, and its subsequent First Amended Judgment, is premised upon a complete and utter mischaracterization of the default entered in Teton County Case No. CV-02-208. Accordingly, because the misrepresentation of the default entered against Dawson in Teton County Case CV-02-208 served as the foundation for the district court's September 11, 2007, opinion and quiet-title judgment and its subsequent first amended judgment, sufficiently unique and compelling circumstances likely exist for the district court to grant Dawson's Rule 60(b)(6) motion.

Therefore, the district court abused its discretion in failing to rule on Dawson's Rule 60(b)(6) motion. Furthermore, sufficient unique and compelling circumstances likely exist in this case to support Dawson's Rule 60(b)(6) motion to vacate the September 11, 2007 opinion and judgment and the subsequent First Amended Judgment.[6]

**B.**

Dawson additionally argues that the district court erred by denying sanctions against Bach for communicating directly with a represented party. Dawson argues that a *pro se* litigant is bound by the Idaho Rules of Professional Conduct that prohibits a lawyer from communicating "about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter . . . ." Idaho R. Prof. Conduct 4.2. Dawson cites this Court's decision in *Runsvold v. Idaho State Bar* for the proposition that "attorneys acting *pro se* and . . . a *pro se* attorney may not communicate with the opposing party about the subject of the

---

[6] Following remand, the district court could submit a substitute order dismissing Dawson's case with prejudice for lack of diligent prosecution and quieting title to a one-quarter interest in Bach while acknowledging that Dawson has a one-quarter interest in the Peacock Property consistent with Judge St. Clair's default opinion in Teton County Case No. CV-02-208.

8

representation." 129 Idaho 419, 422, 925 P.2d 1118, 1121 (1996). The district court held that Bach's communications with Dawson were impermissible and resulted in a violation of Idaho Rule of Professional Conduct 4.2 under *Runsvold*, but the court chose not to impose sanctions and instead offered a warning against future communications. Dawson argues that the court abused its discretion by failing to sanction Bach for the communications.

The district court did not err by denying Dawson's motion for sanctions against Bach. While the district court employed an erroneous rationale for its finding, it reached the correct result. "Where the lower court reaches the correct result by an erroneous theory, this Court will affirm the order on the correct theory." *Nampa & Meridian Irr. Dist. v. Mussell,* 139 Idaho 28, 33, 72 P.3d 868, 873 (2003). The Idaho Rules of Professional Conduct do not apply to *pro se* litigants who are not licensed to practice law in the State of Idaho.[7] Contrary to the district court's interpretation of *Runsvold*, the case stands for the proposition that an attorney proceeding *pro se* is bound by Rule 4.2 of the Idaho Rules of Professional Conduct. 129 Idaho at 422, 925 P.2d at 1121. The case does not stand for the proposition that a *pro se* litigant who is not licensed to practice law in the State of Idaho is bound by the disciplinary rules. *See id*. Therefore, we hold the district court did not err when it denied sanctions against Bach.

## C.

In light of our holding, it is unnecessary for this Court to address the remaining issues raised by Dawson on appeal. If the district court grants Dawson's Rule 60(b)(6) motion, the remaining issues become superfluous, as Dawson is barred by his default in Teton County Case No. CV-02-208 from arguing that he is entitled to more than a one-fourth interest in the Peacock Parcel. Therefore, our holding settles the remaining issues before this Court.

## D.

Bach states five issues on cross-appeal as follows: (1) whether "plaintiffs that first appeared via Marvin Smith have any standing/capacity to file any appeals"; (2) whether plaintiffs "timely, properly and with required jurisdiction, file [sic] any motion for reconsideration per Rule 11(a)(2)(B), or any other subsequent motions"; (3); whether Judge Simpson was "assigned, without jurisdiction in his own stead to change, alter, delete or amend

---

[7] Other jurisdictions consistently hold that *pro se* litigants are not bound by the state bar's disciplinary rules. *See, e.g.*, *Shotkin v. Kaplan*, 180 P.2d 1021, 1022 (Colo. 1947); *Muka v. N.Y. State Bar Assoc.*, 466 N.Y.S.2d 891, 895 (N.Y. Sup. Ct. 1983).

the JOINT CASES"; (4) whether Judge Simpson "commit[ted] gross errors and grossly abuse [sic] his discretion in alt-ring [sic], deleting, modifying or amending said JOINT CASES"; and (5) whether "Judge Simpson, [did] violate, deny and refuse JOHN N. BACH'S procedural and also substantive rights to due process and equal protection in not setting, holding and ruling in a specifically notice hearing which included JOHN N. BACH'S presence and participation before issuing/recording the FIRST AMENDED JUDGMENT." We hold that Bach's claims on appeal will not be considered by this Court because Bach has failed to support them with relevant argument and authority. As this Court held in another matter involving Bach:

> We will not consider an issue not "supported by argument and authority in the opening brief." *Jorgensen v. Coppedge,* 145 Idaho 524, 528, 181 P.3d 450, 454 (2008); *see also* Idaho App. R. 35(a)(6) ("The argument shall contain the contentions of the appellant with respect to the issues presented on appeal, the reasons therefor, with citations to authorities, statutes and parts of the transcript and the record relied upon."). Regardless of whether an issue is explicitly set forth in the party's brief as one of the issues on appeal, if the issue is only mentioned in passing and not supported by any cogent argument or authority, it cannot be considered by this Court. *Inama v. Boise County ex rel. Bd. of Comm'rs,* 138 Idaho 324, 330, 63 P.3d 450, 456 (2003) (refusing to address a constitutional takings issue when the issue was not supported by legal authority and was only mentioned in passing).
>
> Where an appellant fails to assert his assignments of error with particularity and to support his position with sufficient authority, those assignments of error are too indefinite to be heard by the Court. *Randall v. Ganz,* 96 Idaho 785, 788, 537 P.2d 65, 68 (1975). A general attack on the findings and conclusions of the district court, without specific reference to evidentiary or legal errors, is insufficient to preserve an issue. *Michael v. Zehm,* 74 Idaho 442, 445, 263 P.2d 990, 993 (1953). This Court will not search the record on appeal for error. *Suits v. Idaho Bd. of Prof'l Discipline,* 138 Idaho 397, 400, 64 P.3d 323, 326 (2003). Consequently, to the extent that an assignment of error is not argued and supported in compliance with the I.A.R., it is deemed to be waived. *Suitts v. Nix,* 141 Idaho 706, 708, 117 P.3d 120, 122 (2005).
>
> In *Michael,* the Court refused to consider two assignments of error that were "in general terms and [did] not in any respect point out wherein any of the findings or the judgment are erroneous, contrary to law, or not supported by the evidence." 74 Idaho at 445, 263 P.2d at 993. The Court also found fault with the fact that "[t]he brief contain[ed] neither citation of authority nor argument in support of" either assignment of error. *Id.* Similarly, in *Suitts,* the appellant set forth eleven assignments of error, along with a blanket statement that time constraints did not allow her to formulate argument supporting them. 141 Idaho at 708, 117 P.3d at

122. We refused to consider the arguments unsupported by authority, even when authority was later presented in the reply brief. *Id.*

*Bach v. Bagley*, No. 31717, 2010 WL 937270, at \*4–5 (Idaho Mar. 17, 2010). In this case, Bach similarly lists five issues on cross-appeal, along with the blanket statement that he incorporates all argument and authority cited for each issue to every other issue because of the unique and overlapping nature of this case. "Because of Bach's convoluted briefing, it is not easy to follow his arguments or to discern how they might be legally supported." *Id.* at \*5. Therefore, because Bach's arguments on cross-appeal are "so lacking in coherence, citations to the record, citations of applicable authority, or comprehensible argument," we will not consider them on appeal. *Id.*

## IV.

For the foregoing reasons, we affirm the district court's decision on the motion for sanctions and remand the case for a ruling on appellant's Rule 60(b)(6) motion. Costs on appeal are awarded to Dawson.

Chief Justice EISMANN, and Justices BURDICK, W. JONES, and HORTON CONCUR.