IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 40340

AGRISOURCE, INC., an Idaho corporation, )
)
    Plaintiff-Respondent, )
)
v. )
)
ROBERT JOHNSON, )
)
    Defendant-Cross Defendant-Appellant, )
)
and )          **Pocatello, May 2014 Term**
)
NEIL BROWN, INC., an administratively )    **2014 Opinion No. 84**
dissolved Idaho corporation, NEIL EDWIN )
BROWN and VERLIE BOND BROWN, )    **Filed: August 18, 2014**
)
    Defendants-Cross Claimants, )    **Stephen W. Kenyon, Clerk**
)
and )
)
KRISTINE JOHNSON, individually, and )
d.b.a. JOHNSON GRAIN, and JOHNSON )
GRAIN, INC., an Idaho corporation, )
)
    Defendants-Cross Defendants. )
)

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Bonneville County. Hon. Joel E. Tingey, District Judge.

District court order granting summary judgment on breach of contract claim, affirmed. Denial of the Rule 60(b) motion vacated. Case remanded.

Manwaring Law office, Idaho Falls, for appellant. Kipp L. Manwaring argued.

Fletcher Law Office, Burley, for respondent. William Kent Fletcher argued.

_____

BURDICK, Chief Justice

    Robert Johnson ("Johnson") appeals the district court's grant of summary judgment in favor of Agrisource, Inc. ("Agrisource") on Agrisource's breach of contract claim. The

Bonneville County district court held that there was no genuine disputed issue of material fact as to Johnson's lack of disclosure of his agency and alleged principal. Johnson argues on appeal that Agrisource had notice that Johnson was the principal's agent because Agrisource should have known Johnson was an agent and disputed issues of fact existed. Johnson also appeals the district court's denial of his third motion for reconsideration and alternate motion for relief. We affirm in part, vacate in part, and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises from Agrisource's breach of contract claim against Robert Johnson. Johnson argued that he was not liable on the contract because he was an agent for a disclosed principal named "Johnson Grain Inc." which was owned by Neil Brown. Agrisource is an Idaho corporation that deals in agricultural commodities. Agrisource leased a grain elevator in Ririe, Idaho from Johnson's father, Wydell Johnson. For several years prior to 2006, Johnson was Agrisource's employee and managed the elevator. Agrisource terminated its elevator lease in summer 2006, and Johnson was then unemployed. Brown purchased the grain elevator in August 2006 from Wydell Johnson. After the purchase, Johnson went to work managing the elevator.

In August 2006, Brown owned Ririe Grower Supply & Service, Inc., and changed that corporation's name to "Johnson Grain Inc." Brown was Johnson Grain Inc.'s majority shareholder from August 2006 through December 2007. Johnson and Brown opened a business checking account under Johnson Grain Inc.'s name with both men as signatories. In September 2006, Brown applied with the Idaho Department of Agriculture for a commodity dealer license and a seed buyer license under Johnson Grain Inc.'s name.

After Johnson Grain Inc. received its commodity license, Johnson entered into two contracts to sell durum wheat to Agrisource. One contract was dated December 13, 2006, and the other was January 12, 2007. Both contracts were on Agrisource's commodity purchase form contracts. These forms listed "Johnson Grain" as the purchasing party. Johnson filled in "Johnson Grain" on the contract's seller line and signed his name below. Agrisource received the December contract's wheat. Agrisource paid for the delivered wheat with checks made out to "Johnson Grain," which were endorsed indicating deposit into an account for "Johnson Grain Inc." However, Agrisource did not receive 15,527.87 bushels of wheat promised in the January contract. Agrisource contacted both Johnson and Brown for two years about the undelivered

2

wheat. Neither party delivered the wheat, so in March 2009 Agrisource purchased wheat elsewhere. This resulted in $51,241.97 in damages.

In February 2010, Agrisource filed a claim alleging breach of the January 2007 contract against Brown, Brown's wife, and Neil Brown, Inc. (collectively "the Browns").[1] Agrisource later filed an amended complaint adding Johnson, Johnson's wife, and Johnson's corporation as defendants. Agrisource alleged that Johnson was an individual doing business as Johnson Grain when he entered into the January 2007 contract.

Johnson filed his motion for summary judgment against Agrisource on February 1, 2012. Johnson argued that he was not personally liable because in January 2007 he was an agent for a disclosed principal. He submitted his own affidavit, testifying that Agrisource had notice that Brown planned to purchase the grain elevator. He also stated that he managed the elevator as Johnson Grain Inc.'s employee, and never as Johnson Grain or an individual.

Agrisource then moved for summary judgment, arguing that Johnson d/b/a Johnson Grain entered into the January 2007 contract with Agrisource. Agrisource supported its motion with affidavits from its employee and its President. The Agrisource employee stated that he was Agrisource's representative for contracts with Johnson Grain and that Johnson never notified him that Johnson Grain was a corporation or that Johnson was its agent.

The district court granted Agrisource summary judgment against Johnson on April 6, 2012. The district court held that there was no disputed issue of fact as to Johnson's lack of disclosure of Johnson Grain Inc. as a principal and that Agrisource had no notice of an agency relationship. Based on these conclusions, the court held Johnson was liable on the contract whether or not he later established an agency relationship with Johnson Grain Inc. The district court entered its judgment on April 17, 2012.

Johnson moved to reconsider on April 18, 2012, and submitted his second affidavit. He testified that he told Agrisource that Brown purchased the elevator, Johnson operated it for Brown, and the company had not yet received its commodity license. Johnson also stated that he told Agrisource to make the checks out to Brown's company, Johnson Grain, but he did not recall whether he specifically gave Johnson Grain Inc.'s full name. The district court denied the motion, holding that the record did not support a claim that Johnson adequately disclosed his principal. The court reasoned that Johnson's obligation to disclose agency included specificity as

---

[1]In December 2007, Johnson Grain Inc. changed its name to "Neil Brown, Inc."

to his principal that he did not provide. The court held that at best Johnson's affidavits showed he disclosed that he was acting on behalf of Brown or Brown's company and not on Johnson Grain Inc.'s behalf. On June 14, 2012, the court entered a judgment with an I.R.C.P. 54(b) certificate. Johnson submitted his second motion for reconsideration on June 18, 2012, with an affidavit from Wydell Johnson. The district court denied that motion at an August 14, 2012 hearing.

The district court entered its amended judgment on August 21, 2012, adding costs and fees. On August 29, 2012, Johnson filed a third motion to reconsider and requested I.R.C.P. 60(b) relief. He amended that motion on September 10, 2012. He supported the motion with his own affidavit and an affidavit from Jeanne Harris, one of Brown's employees. The district court denied the third motion to reconsider under I.R.C.P. 11(a)(2) because the court had already entered a final judgment against Johnson and thus could not consider new evidence. The district court denied Johnson I.R.C.P. 60(b) relief because Harris's testimony was previously discoverable and Johnson did not show unique and compelling circumstances. Johnson timely filed his amended notice of appeal.

## II. ISSUES ON APPEAL

1. Whether the district court erred in granting summary judgment.
2. Whether the district court abused its discretion in denying Johnson's third motion to reconsider and alternate motion for relief.
3. Whether either party is entitled to attorney fees on appeal.

## III. ANALYSIS

### A. The district court properly granted summary judgment to Agrisource.

We review an order for summary judgment using the same standard that the district court used in ruling on the motion. *Intermountain Real Properties, LLC v. Draw*, *LLC*, 155 Idaho 313, 316, 311 P.3d 734, 737 (2013). Summary judgment is appropriate if "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). We construe disputed facts and draw all reasonable inferences from the record in the non-moving party's favor. *Fuller v. Callister*, 150 Idaho 848, 851, 252 P.3d 1266, 1269 (2011). "However, the nonmoving party cannot rely on mere speculation, and a scintilla of evidence is insufficient to create a genuine issue of material fact." *Bollinger v. Fall River Rural Elec. Co-op., Inc.*, 152 Idaho 632, 637, 272 P.3d 1263, 1268 (2012).

4

The district court held that there was no genuine issue of fact that Johnson did not disclose Johnson Grain Inc. as an alleged principal and that Agrisource had no notice of Johnson's agency. The court therefore held Johnson was liable to Agrisource whether or not he proved he was Johnson Grain Inc.'s agent. The court concluded that Agrisource had no duty to investigate whether Johnson was an agent for a principal because the agent's burden is to disclose agency and the principal's identity to the other contracting party. The court noted that despite Johnson's affidavits, the evidence was clear that Agrisource became aware of Johnson's agency claim only after the breach occurred. Thus, the court found no issue of fact about whether Agrisource knew Johnson was an agent for Johnson Grain Inc. at the time of the contract. The court denied Johnson's first and second motion to reconsider on these same grounds.

Johnson argues that the district court misapplied agency law's disclosure rules because a principal is disclosed if the other party should know of the principal. Johnson contends that Agrisource should have known Johnson Grain Inc. was his principal because it regularly did business with Johnson and Johnson informed Agrisource that Brown's company did not have its commodity dealer license. Johnson also contends a party does not need to precisely disclose his principal's full name and exact nature to avoid personal liability. Consequently, the first issue is how an agent must disclose his agency and principal.

An agent is liable on a contract when his agency and principal are undisclosed. *McCluskey Commissary, Inc. v. Sullivan*, 96 Idaho 91, 93, 524 P.2d 1063, 1065 (1974). An agent is also liable when he discloses his agency but not the principal he acts for; this is a partial disclosure. *Keller Lorenz Co. v. Ins. Assocs. Corp.*, 98 Idaho 678, 681, 570 P.2d 1366, 1369 (1977). However, an agent is not liable when, at or before the time of the contact, he discloses that he acts as his principal's agent. *Gen. Motors Acceptance Corp. v. Turner Ins. Agency, Inc.*, 96 Idaho 691, 696–97, 535 P.2d 664, 669–70 (1975). In other words, a principal is disclosed when the other party has notice of two facts: (1) the agent is acting for a principal and (2) the principal's identity. *Id.* at 697, 535 P.2d at 670.

Because we have relied on the Restatement of Agency before, Johnson argues this Court should use the Restatement's definition of notice to determine whether Agrisource had notice of Johnson's agency and principal. Under the Restatement, a party has notice when "he knows the fact, has reason to know it, should know it, or has been given notification of it." *Restatement (Second) of Agency* § 9 (1958). A party has reason to know a fact when a person of ordinary or

superior intelligence "would infer that the fact in question exists or that there is such a substantial chance of its existence that, if exercising reasonable care" he would act assuming that fact was possible until he knew for sure. *Id.* at *Cmt. d*. Johnson argues that because Agrisource was in the commodity business, it was a party with superior knowledge with a duty to investigate secretary of state filings, bank accounts, and commodity licenses. He argues it follows that Agrisource "should have known" that it was doing business with Johnson Grain Inc. and Johnson was the corporation's agent.

Our decisions indicate an agent has a duty to disclose by informing the other party of his agency and the principal's identity. We have stated: "[i]t is a basic principle that an agent who enters into a contract on behalf of a corporation, but who neither discloses his agency nor the existence of that corporation to the third party, is personally liable to the third party." *McCluskey Commissary, Inc.*, 96 Idaho at 93, 524 P.2d at 1065. In *McCluskey,* we applied agency law to corporate officers: "the managing officer of a corporation, even though acting for the company, becomes liable as a principal where he deals with one ignorant of the company's existence and of his relation to it, and fails to inform the latter of the facts." *Id.* (quoting 3 *Fletcher's Cyclopedia on Corporations*, § 1120, p. 762 (1965)). This applies to other corporate agents. *See W. Seeds, Inc. v. Bartu*, 109 Idaho 70, 71, 704 P.2d 974, 975 (Ct. App. 1985) (A contracting agent "is liable as a party to the contract unless he discloses, at or before the time of entering into the contract, the agency relationship and the identity of the principal."). Other jurisdictions also require an agent to inform the other contracting party of his agency and the principal; in other words, the agent must ensure the other party actually knows of his agency and principal. *See Treadwell v. J.D. Const. Co.*, 938 A.2d 794, 799 (Me. 2007) ("To avoid liability for the agent, the third party must have actual knowledge of the identity of the principal, and does not have a duty to investigate."); *See also Cent. Missouri Prof'l Servs., Inc. v. Shoemaker*, 108 S.W.3d 6, 10 (Mo. Ct. App. 2003) ("It is not sufficient to disclose facts and circumstances which would, if followed by inquiry, disclose the fact of agency and the identity of the principal.") Thus, the agent must inform the other party of his principal and agency and not rely on what that party "should have known."

The agent must inform the other contracting party of his agency relationship clearly and affirmatively. *In re Laraway*, 2010 WL 3703272 (Bankr. D. Idaho Sept. 13, 2010). In *In re Laraway*, an Idaho federal bankruptcy court used Idaho agency law to determine that a general

6

contractor was individually liable on a home building contract. *Id.* Two plaintiffs hired the contractor with "Diamond Ridge Construction" listed on the contract and loan documents. *Id.* at *3. The court held that contractor did not adequately disclose his agency or principal because the contract did not indicate he was the corporation's representative. *Id.* The court explained that the contract did not indicate the contractor's principal because "Diamond Ridge Construction" was listed as a party without "Inc." or anything else to show a corporate structure. *Id.* The court reasoned that the contractor did not indicate his agency because he did not sign his name in a representative capacity. *Id.* The court also held that a footer in the building specs that contained the corporation's contractor registration number could not disclose the principal because it was not the plaintiff's burden to inquire about an abstruse footer's meaning. *Id.* at *4. Instead, the court emphasized that it was the contractor's burden to conspicuously inform the plaintiffs of the corporation's name. *Id.* A contractor's license and a client packet that hung in the office also did not adequately disclose the principal even though both read "Diamond Ridge Construction, Inc.," as no evidence showed the plaintiffs read or would have understood those items meant they were contracting with a corporation. *Id.* Thus, the agent's burden is to affirmatively and clearly inform the other party he is acting as an agent for a specific principal. Whether the other party "should have known" is not the standard.

The next issue is whether Johnson's affidavits created a genuine issue of fact as to whether he affirmatively informed Agrisource that he was working as Johnson Grain Inc.'s agent. An alleged agent's declarations made outside of the alleged principal's presence are not enough to prove agency, but "where the agency has been established by independent evidence, the declarations as corroborative evidence are admissible." *Hayward v. Yost*, 72 Idaho 415, 429, 242 P.2d 971, 979 (1952). Agency is generally a fact question for the jury when the evidence discloses corroborative facts. *See id.* When a non-moving party asserts agency as an affirmative defense, that party's burden on summary judgment is to support his claim that the principal was disclosed. *Chandler v. Hayden*, 147 Idaho 765, 770–71, 215 P.3d 485, 490–91 (2009).

Johnson contends that Agrisource should have known Johnson Grain Inc. existed because Agrisource was aware the company needed a commodity dealer license and Agrisource regularly did business with Johnson. However, these facts place the burden on Agrisource to investigate Johnson's possible agency and his alleged principal. Similar to how the plaintiffs in *In re Laraway* had no duty to investigate a contractor number in a footer, Agrisource had no duty to

investigate which entity or individual was listed on the commodity dealer license. The burden was on Johnson to affirmatively and clearly disclose his agency and principal, not on Agrisource to ask questions because it knew Johnson. Indeed, Agrisource's employees stated that they did not know Johnson worked for Johnson Grain Inc. Johnson must provide facts that show he did disclose to Agrisource that he was Johnson Grain Inc.'s agent. Because commodity licenses and a prior business relationship do not affirmatively inform Agrisource of Johnson's agency, these facts and their inferences do not provide a genuine issue of material fact.

Johnson argues that the district court failed to draw the reasonable inference that he disclosed his agency for Johnson Grain Inc. because (1) Johnson told Agrisource that he was working for Brown's company; (2) Johnson told Agrisource that Brown owned the grain elevator; and (3) Agrisource's checks to Johnson Grain were endorsed with "Johnson Grain Inc." and deposited into Johnson Grain Inc.'s account. Johnson argues that the reasonable inference from these facts is that he told Agrisource that he worked for Johnson Grain Inc.

On Johnson's first motion to reconsider, the district court found that even if Agrisource knew Johnson was acting as an agent, the record was undisputed that Johnson never disclosed to Agrisource that he was acting specifically as Johnson Grain Inc.'s agent. The court determined that at best, Johnson disclosed that he was acting on behalf of Brown or Brown's company. The court concluded that Johnson was acting for a partially disclosed principal and consequently liable on the contract.

The first question is whether Agrisource knew Johnson was an agent for a principal. It is unreasonable to infer that Agrisource knew Johnson was an agent for Johnson Grain Inc. because Agrisource knew Brown bought the elevator. Wydell Johnson, who previously owned the grain elevator, stated that he told Agrisource that Robert Johnson would be managing the elevator for Brown. Even if this establishes that Agrisource knew Johnson worked for a principal, it does not establish Agrisource knew Johnson Grain Inc.'s identity. The second question is then whether Johnson provided facts that show he informed Agrisource of his principal's identity.

An agent gives sufficient notice of his principal's identity when an agent informs the other party of the entity he represents with enough specificity for the other party to actually know it is dealing with the particular entity. This includes specificity as to the company's name and corporate existence. *See Interlode Constructors, Inc. v. Bryant*, 132 Idaho 443, 447, 974 P.2d 89, 93 (Ct. App. 1999). In *Interlode*, the Court of Appeals found that a manager named Bryant did

not disclose his principal, "Don Bryant & Associates, Inc.," to the other party because he never informed that party that he worked for that corporation. *Id.* The letterhead and business documents read "Bryant & Associates," which led the court to reason that the other party believed it was dealing with Bryant individually and not a corporation. *Id.* The fact that Bryant sent a fax to the other party with small text in the corner that read "from Bryant & Assoc. Inc." did not factor in the court's analysis. *Id.* Similarly, in *Bartu*, the Court of Appeals held an agent had not, as a matter of law, disclosed his principal because although the other party knew the agent contracted for a corporation, it may not have known which corporation the agent acted for. 109 Idaho at 71, 704 P.2d at 975. The court remanded to determine whether the other party knew the principal's identity. *Id.* at 72, 704 P.2d at 976. Thus, the district court correctly held that Johnson needed to affirmatively inform Agrisource that a corporation specifically named Johnson Grain Inc. was his principal.

Here, Johnson's statements that he told Agrisource that he worked for Brown do not give rise to a reasonable inference that Agrisource knew Johnson was Johnson Grain Inc.'s agent. Johnson "did not recall" whether he told Agrisource that the company's full name was "Johnson Grain Inc." Johnson stated that he told Agrisource that the company was "Neil's company." Johnson also did not disclose his agency in the contract. Johnson filled in "Johnson Grain" on the contract's seller line and signed his name on the line below. This indicates Johnson Grain is the contracting party and Agrisource knew it was doing business with Johnson Grain. However, nothing clearly shows that Agrisource was contracting with a corporation. Agrisource could have believed Johnson operated the elevator with Brown in a partnership or as an individual d/b/a Johnson Grain. Indeed, Johnson's burden to affirmatively inform Agrisource of his principal with specificity was particularly important because his name mirrored the corporation's name. All inferences drawn in Johnson's favor do not show that Johnson disclosed his principal's identity as a corporation.

Johnson also notes Agrisource made its checks out to "Johnson Grain," and these checks were deposited into Johnson Grain Inc.'s bank account.[2] An agent's use of corporate checks does not necessarily notify the other party that a corporate principal exists. *Jensen v. Alaska Valuation Serv., Inc.*, 688 P.2d 161, 164 (Alaska 1984) ("An agent's use of corporate checks is one factor

---

[2] Johnson also notes that Johnson Grain Inc. sent Agrisource invoices with its full corporate name. This fact comes from affidavits submitted with Johnson's third motion to reconsider and alternate motion for relief, and is discussed below.

for the trier of fact's consideration, but it is not necessarily determinative."). Here, Johnson never used corporate checks to pay Agrisource. Instead, Johnson Grain Inc. endorsed Agrisource's checks with a stamp that deposited the checks into Johnson Grain Inc.'s account. While this endorsement specifically identifies Johnson Grain Inc. a stamp on a check's endorsement line is something that Agrisource did not have a duty to investigate. These endorsements are also not actions Johnson affirmatively took to inform Agrisource of his agency and principal. Thus, Johnson did not provide facts that show he met his duty to disclose his principal and did not create a material issue of fact.

Johnson has not created a genuine issue of material fact or provided a reasonable inference that he disclosed to Agrisource that Johnson Grain Inc. was his corporate principal. We affirm the district court's grant of summary judgment to Agrisource based upon the record and affidavits before the court on summary judgment and on Johnson's first two motions to reconsider.

## B. The district court properly did not consider new affidavits on Johnson's third motion to reconsider, but abused its discretion by not considering Johnson's third affidavit on the I.R.C.P. 60(b) motion.

Johnson argues the district court abused its discretion by not considering affidavits that he presented with his third motion to reconsider and alternative motion for relief. The district court denied Johnson's third motion to reconsider as to Agrisource, holding that the motion was impermissible under I.R.C.P. 11(a)(2) because that rule applies only to reconsideration of interlocutory orders. The court reasoned that therefore I.R.C.P. 11(a)(2) did not allow the court to reconsider the court's June 14, 2012 Final Judgment. The court noted it consequently could not consider new affidavits from Harris and Johnson. The district court also found Johnson was not entitled to I.R.C.P. 60(b) relief. Johnson argues the court erred by (1) finding his motion to reconsider untimely and (2) denying his I.R.C.P. 60(b) motion.

1. Johnson's third motion for reconsideration.

Idaho Rule of Civil Procedure 11(a)(2)(B) states:

> A motion for reconsideration of any interlocutory orders of the trial court may be made at any time before the entry of final judgment but not later than fourteen (14) days after the entry of the final judgment. A motion for reconsideration of any order of the trial court made after entry of final judgment may be filed within fourteen (14) days from the entry of such order; provided, there shall be no motion for reconsideration of an order of the trial court entered on any motion filed under Rules 50(a), 52(b), 55(c), 59(a), 59(e), 59.1, 60(a), or 60(b).

10

Thus, I.R.C.P. 11(a)(2)(B) allows two different ways to file motions to reconsider interlocutory orders that the court made before its final judgment. A party can (1) file the motion to reconsider before the court enters a final judgment or (2) file the motion to reconsider within fourteen days after the court enters a final judgment.

The district court first entered an order granting Agrisource summary judgment against Johnson on April 6, 2012. The district court entered a judgment for Agrisource against Robert Johnson on April 17, 2012. When an order granting summary judgment is filed before a final judgment, that order is an interlocutory order. *PHH Mortgage Servs. Corp. v. Perreira*, 146 Idaho 631, 635, 200 P.3d 1180, 1184 (2009). This means the April 6, 2012 order was an interlocutory order that Johnson could move to reconsider at any time before a final judgment was entered.

Johnson properly moved to reconsider that summary judgment order on April 18, 2012. He used the first option under I.R.C.P. 11(a)(2)(B): file the motion to reconsider before the court enters a final judgment. Pursuant to I.R.C.P. 54(a), a final judgment is either "certified as final pursuant to subsection (b)(1) of this rule or judgment has been entered on all claims for relief, except costs and fees, asserted by or against all parties in the action." When the court entered its April 17, 2012 Judgment the court still had unresolved claims from Agrisource against Johnson's wife, the Johnsons' corporation, and the Browns. Thus, the court's April 17, 2012 Judgment was not a final judgment because it entered relief for Agrisource against only Robert Johnson, not for all claims asserted by or against all parties in the action.

The district court entered its order denying Johnson's first motion to reconsider on May 31, 2012. This was also an interlocutory order that Johnson could move to reconsider at any time before a final judgment.

On June 14, 2012, the district court entered a judgment in Agrisource's favor against Johnson and certified that judgment with an I.R.C.P. 54(b) certificate. This certification made the June 14, 2012 Judgment a final judgment. A final judgment triggers the second option under I.R.C.P. 11(a)(2)(B): file a motion to reconsider within fourteen days after the court enters a final judgment. Four days after the final judgment Johnson filed a second motion to reconsider, asking the court to reconsider its denial of Johnson's first motion to reconsider and its decision granting Agrisource summary judgment. This motion was proper because (1) it moved the court to reconsider the court's orders on summary judgment and Johnson's first motion to reconsider,

which were both interlocutory orders; and (2) Johnson made it within fourteen days of the June 14, 2012 Judgment, which was a final judgment. "The court must consider new evidence bearing on the correctness of a summary judgment order if the motion to reconsider is filed within fourteen days after a final judgment issues." *Kepler-Fleenor v. Fremont Cnty.*, 152 Idaho 207, 210, 268 P.3d 1159, 1162 (2012).

The court denied Johnson's second motion to reconsider at an August 14, 2012 hearing and noted this denial in its Order on Motions for Costs and Attorney Fees on August 21, 2012. On August 29, 2012, Johnson filed his third motion to reconsider, asking the court to reconsider its summary judgment decision and alternatively grant relief from the certified final judgment. On September 11, 2012, Johnson filed an amended third motion to reconsider, which also asked the court to reconsider a September 7, 2012 order that granted Brown's motion to reconsider.

Johnson contends that his third motion to reconsider was permissible because the court's decision on his second motion to reconsider was an order entered after final judgment that could be reconsidered under I.R.C.P. 11(a)(2)(B). Besides the two ways to reconsider interlocutory orders made before a final judgment, I.R.C.P. 11(a)(2)(B)'s second sentence allows a motion to reconsider "any order of the trial court made after entry of final judgment." The district court noted its denial of Johnson's second motion to reconsider in its August 21, 2012 Order. Johnson argues he had fourteen days from August 21, 2012, to file a motion to reconsider the district court's denial of the second motion to reconsider.

However, Johnson was not asking the court to reconsider "any order of the trial court made after entry of final judgment." Johnson's third motion to reconsider instead asked the district court to reconsider its decision on summary judgment. While Johnson lists affidavits he filed with his earlier motions, nowhere does Johnson ask for the district court to reconsider its denial of his second motion for reconsideration. Thus, Johnson's third motion to reconsider was impermissible under I.R.C.P. 11(a)(2)(B) because (1) the motion did not ask the court to reconsider any order made after a final judgment and (2) Johnson filed his motion more than fourteen days from when the district court certified the judgment as final.

If Johnson had requested that the court reconsider its denial of his second motion to reconsider, his third motion to reconsider still would not be permissible under I.R.C.P. 11(a)(2)(B). This is because a motion to reconsider the denial of a motion to reconsider is still asking the court to reconsider the underlying interlocutory order. Hence, that motion is

12

ultimately based upon an earlier interlocutory order and not an order made after entry of final judgment.

Policy considerations support this conclusion. In general, we presume all judgments are valid: "[a]ll presumptions are in favor of the regularity and validity of judgments of courts of general jurisdiction." *Hartenbower v. Mut. Ben. Life Ins. Co.*, 67 Idaho 254, 260, 175 P.2d 698, 701 (1946). "On collateral attack, the invalidity of the judgment must ordinarily appear upon the face of the judgment roll." *Welch v. Morris*, 49 Idaho 781, 783, 291 P. 1048, 1049 (1930). Ways to challenge a final judgment other than on appeal are outlined in the Idaho Rules of Civil Procedure. *See, e.g.*, Rule 52(b), 55(c). Also, I.R.C.P. 11(a)(2)(B) allows the trial court to reconsider facts in light of any new or additional facts that are submitted in support of the motion. *Coeur d'Alene Mining Co. v. First Nat'l Bank of N. Idaho*, 118 Idaho 812, 823, 800 P.2d 1026, 1037 (1990). This ensures the district court decides a case on the proper law and facts. After a final judgment, a party has one more chance under I.R.C.P. 11(a)(2)(B) to ask the court to decide the law and facts correctly. That request must occur within fourteen days after the final judgment. Allowing continual motions to reconsider the district court's orders on earlier motions to reconsider would be the antithesis of finality: those motions could go on to infinity. For this reason, the rule specifies that there can be no motion to reconsider a trial court order entered on motions under Rule 50(a), 52(b), 55(c), 59(a), 59(e), 60(a), or 60(b). A party cannot continuously ask the court to reconsider its decisions on motions to reconsider after entry of a final judgment. Therefore, I.R.C.P. 11(a)(2)(B)'s second sentence does not apply to decisions on motions to reconsider.

This Court's decisions support this interpretation. In *Eby v. State*, 148 Idaho 731, 735–36, 228 P.3d 998, 1002–03 (2010), this Court held that a dismissal under I.R.C.P. 40(c) was "in effect a final judgment," so I.R.C.P. 11(a)(2)(B) was not the proper method for relief because I.R.C.P. 11(a)(2)(B) "by its terms, applies to interlocutory orders." *Id.* at 735, 228 P.3d at 1002. Similarly, this Court's decision in *Dunlap v. Cassia Mem'l Hosp. Med. Ctr.*, 134 Idaho 233, 236, 999 P.2d 888, 891 (2000), held that under Rule 11(a)(2)(B) a motion to reconsider did not apply to a partial summary judgment because "that judgment no longer was an interlocutory order but had become a final judgment" as a result of a I.R.C.P. 54(b) certificate. *Id.* Here, a final judgment was entered, and Johnson could only ask the court to reconsider summary judgment within fourteen days after the entry of a final judgment.

13

Alternatively, Johnson argues the August 21, 2012 Amended Judgment was a final judgment that again required the district court to certify the judgment as final. That judgment noted that the court had previously entered judgment in favor of Agrisource against Johnson, but now just included the costs and fees in the judgment. Therefore, the issue is whether the amended judgment was another final judgment that needed to be certified.

When multiple parties or claims are involved, I.R.C.P. 54(b)(1) allows a district court to enter "a final judgment upon one or more but less than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of the judgment." A judgment is final if either it has been "certified as final pursuant to subsection (b)(1) of this rule or judgment has been entered on all claims for relief, *except costs and fees*, asserted by or against all parties in the action." I.R.C.P. 54(a) (emphasis added). This Court has held "that the forty-two day period to file a notice of appeal begins to run once an order is entered that resolves all issues, grants all relief to which the prevailing party is entitled other than attorney fees and costs, and brings an end to a lawsuit." *Goodman Oil Co. v. Scotty's Duro-Bilt Generator, Inc.*, 148 Idaho 588, 591, 226 P.3d 530, 533 (2010). Here, the district court certified summary judgment for Agrisource against Johnson as final under I.R.C.P. 54(b) on June 14, 2012. This made that order a final judgment. The August 21, 2012 Amended Judgment was exactly the same except that it added fees and costs. Given the language in *Goodman Oil* and that I.R.C.P. 54(a) delineates that a certified judgment is final, there is no reason why an additional judgment that adds only costs and fees requires another certification to become final.

In conclusion, Johnson's third motion to reconsider was impermissible under I.R.C.P. 11(a)(2)(B) because (1) the motion did not ask the court to reconsider any order made after its final judgment and (2) Johnson filed his motion more than fourteen days after the district court certified the judgment as final. Thus, the district court properly decided not to consider the new affidavits under I.R.C.P. 11(a)(2)(B).

2. Idaho Rule of Civil Procedure 60(b) motion.

Johnson argues the district court abused its discretion when it denied his I.R.C.P. 60(b) relief request because the court did not consider Harris's affidavit and ignored Johnson's third affidavit. A district court's decision to grant or deny a I.R.C.P. 60(b) motion is within the district court's discretion. *Dawson v. Cheyovich Family Trust*, 149 Idaho 375, 380, 234 P.3d 699, 704 (2010). A district court does not abuse its discretion when it "(1) correctly perceives the issue as

14

discretionary, (2) acts within the bounds of discretion and applies the correct legal standards, and (3) reaches the decision through an exercise of reason." *O'Connor v. Harger Constr., Inc.*, 145 Idaho 904, 909, 188 P.3d 846, 851 (2008).

Idaho Rule of Civil Procedure 60(b)(2) allows relief from a final judgment when there is "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)." Rule 60(b)(6) also allows relief when there is "any other reason justifying relief from the operation of the judgment." First, the district court held Jeanne Harris's testimony was previously discoverable by due diligence and did not meet I.R.C.P. 60(b)(2) because Johnson always knew Brown employed Harris and could have subpoenaed her. Second, the court held Johnson did not show unique and compelling circumstances under I.R.C.P. 60(b)(6) because he had lots of time to prepare a record and Harris's knowledge was not a surprise.

Johnson argues that Harris's testimony was not previously discoverable because Harris testified that she would not have provided evidence earlier. In her affidavit Harris states: "Until about 10 days ago I have not volunteered any information to Rob and I have been reluctant to tell anyone about my knowledge." This does not indicate that Harris would not disclose under any circumstances, only that she was reluctant. The record also indicates that Johnson knew Harris was Brown's bookkeeper from working at the elevator, so Johnson should not have been surprised. Thus, the district court acted within its discretion when it when applied I.R.C.P. 60(b).

Johnson also argues the district court erred by ignoring his third affidavit. That affidavit included original invoices that Johnson's wife discovered while cleaning out an office at the grain elevator. The invoices show the name "Johnson Grain Inc." printed across the top and are dated before the January contract. Johnson alleges that he prepared those invoices and sent them to Agrisource before December 2006.

The district court mentions Johnson's third affidavit only in its facts section. The court's decision discusses Harris's affidavit in the context of I.R.C.P. 60(b)(2), 60(b)(3), and 60(b)(6), but does not discuss why Johnson's third affidavit fails to meet Rule 60(b)'s requirements. A district court's silence, even if assumed to be an unsupported denial, is still an abuse of discretion. *Dawson*, 149 Idaho at 380, 234 P.3d at 704. A district court's silence "leaves this Court without an adequate basis upon which to understand the premise behind the district court's determination . . . ." *Id.* When a district court fails to explain why a case does not meet I.R.C.P.

15

60(b)'s circumstances, the court abuses its discretion. *Printcraft Press, Inc. v. Sunnyside Park Utilities, Inc.*, 153 Idaho 440, 450, 283 P.3d 757, 767 (2012) ("In the absence of an explanation as to why this case presented unique and compelling circumstances to trigger Rule 60(b)(6), the court abused its discretion in relying on that subsection to grant relief."). Here, the district court explained its reasoning as to Harris's affidavit. However, the court did not mention Johnson's affidavit or the attached invoices, which leaves this Court without any basis to understand the district court's denial of Johnson's motion. Thus, the district court abused its discretion.

Agrisource contends that any error was harmless because most of Johnson's affidavit was inadmissible. The district court never ruled on admissibility, and therefore this Court will not rule on admissibility. We vacate the district court's denial of I.R.C.P. 60(b) relief and remand for the district court to review Johnson's third affidavit and decide how that affidavit may impact his request for I.R.C.P. 60(b) relief.

## C. Whether either party is entitled to attorney fees.

Johnson argues he is entitled to attorney fees under Idaho Code section 12-120(3). Agrisource argues it is entitled to attorney fees under Idaho Code sections 12-120(3) and 12-121. Idaho Code section 12–120(3) awards attorney fees to the prevailing party in any civil action to recover "in any commercial transaction." *Blimka v. My Web Wholesaler, LLC*, 143 Idaho 723, 728, 152 P.3d 594, 599 (2007). Commercial transaction is defined as "all transactions except transactions for personal or household purposes." I.C. § 12–120(3). This Court awards attorney fees under Idaho Code section 12–120(3) if the commercial transaction is integral to the claim and the party attempts to recover on that basis. *Blimka, LLC*, 143 Idaho at 728, 152 P.3d at 599. Here, Idaho Code section 12-120(3) applies because the underlying transaction is a commercial wheat delivery contract.

Although Agrisource prevailed on the summary judgment and third motion for reconsideration issues, the district court still must determine whether it will consider Johnson's third affidavit and grant I.R.C.P. 60(b) relief. Because we have affirmed summary judgment, at this point Agrisource is the prevailing party in the trial court and therefore would be entitled to its reasonable attorney fees under Idaho Code section 12-120(3). If the trial court decides to grant Johnson's I.R.C.P. 60(b) relief and relieve him of the final judgment, then the prevailing party may change. The trial court would then determine the prevailing party after any

16

subsequent proceedings. If the trial court does not grant I.R.C.P. 60(b) relief to Johnson, then Agrisource is entitled to attorney fees and costs for its trial court proceedings and this appeal.

## IV. CONCLUSION

We affirm the district court's grant of summary judgment to Agrisource and the denial of Johnson's third motion to reconsider. However, we vacate the district court's denial of Johnson's request for I.R.C.P. 60(b) relief and remand for the district court to analyze Johnson's third affidavit in the context of Johnson's request for I.R.C.P. 60(b) relief.

Justices EISMANN, J. JONES and HORTON, CONCUR